The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Juan Jose CANDELARIA,** Defendant–Appellant.

No. 01CA2467.

Colorado Court of Appeals, Div. III.

June 17, 2004.

Rehearing Denied Sept. 2, 2004.

Certiorari Granted March 7, 2005.

Ken Salazar, Attorney General, John J. Fuerst, III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge GRAHAM.

Defendant, Juan Jose Candelaria, appeals the judgments of conviction entered upon jury verdicts finding him guilty of first degree murder after deliberation, first degree extreme indifference murder, conspiracy to commit first degree extreme indifference murder, four counts of attempted first degree murder, tampering with physical evidence, and crime of violence. We affirm in part, vacate in part, and remand.

The evidence at trial established the following facts. On the afternoon of the murder, defendant and V.M., a gang member, were driving V.M.'s van when P.M., a rival gang member, drove up alongside them. After the occupants of the two vehicles exchanged verbal gang threats and threw objects at one another's vehicles, P.M. fired several shots at the van, missing its occupants.

Defendant and V.M. then drove to T.V. and A.V.'s house where they met several other people. Defendant was upset by the episode and told the others that he was going to "kick [P.M.'s] ass" and "f* * * him up." He also said, "[W]e are going to kill that mother f* * * * *." Various others said they, too, wanted to go after P.M.

The group went to a friend's house where they discussed the earlier shooting. The group then left in two cars to look for P.M.'s car. Defendant drove his car. While driving around, V.M., who was in defendant's car, opened a gun case containing a TEC-9 semiautomatic machine pistol, inserted a clip, and said, "I got something for [P.M.]." V.M. also handed a .380 handgun to one of the passengers in the car.

Meanwhile, P.M. and his friends decided to go to a party. Four of the friends, including the victim, used P.M.'s car, while P.M. rode in a different car. As the friends were driving, defendant drove up behind them, and occupants in both vehicles exchanged gunfire. Someone in defendant's car fired twenty-four rounds at P.M.'s car. One of the rounds fatally struck the victim. Three .380 shell casings were found at the scene.

Defendant was sentenced to life imprisonment for first degree murder after deliberation. The court did not impose a sentence for first degree extreme indifference murder because there was a single victim. The court imposed consecutive sentences of forty-eight years on each of the attempt and conspiracy convictions and a concurrent sentence of one year on the tampering with physical evidence conviction.

## I.

■ Defendant first contends that the trial court abused its discretion in admitting the testimony of a prosecution witness because it was irrelevant, prejudicial, and hearsay. Although we believe that the statement likely satisfied one or more exceptions to the hearsay rule, we nevertheless conclude that any perceived error was harmless.

### A.

Defense counsel sought to prevent a prosecution witness, M.C., from testifying that, on the night of the murder, a group of young Hispanic males left T.V. and A.V.'s house, and he heard one of them say, "I'm going to kill that fool."

Defense counsel objected on the grounds of relevancy and prejudice, arguing that there was no connection between defendant and the statement because M.C. did not know who made the statement or whether defendant was even present when the statement was made.

The prosecution argued that the identity of the declarant goes to weight, not admissibility, and that the statement was admissible as a statement of a co-conspirator. The prosecution also asserted that the statement was admissible under several exceptions to the hearsay rule, including CRE 803(3), state of mind; CRE 803(1), spontaneous statement; and CRE 803(2), excited utterance.

The court ruled that the statement is "not inadmissible per se and that the defense can question its weight through cross-examination but not through exclusion from the jury."

At trial, M.C. testified that he was twelve at the time of the murder and lived across the street from T.V. and A.V. He testified that, between 10 and 11:30 p.m. on the night of the murder, he was watching television in

his bedroom, which faced T.V. and A.V's house, when he saw six or seven Hispanic males between the ages of eighteen and twenty-one, none of whom he had seen before, leaving the house. M.C. testified that, before they drove away, one of them yelled that he was "going to get him or kill [him]."

### B.

Although defendant did not object to the admission of the statement on hearsay grounds, the prosecution argued that the statement was admissible as a hearsay exception, and the trial court agreed with the prosecution. Thus, we deem the issue properly raised in the trial court, and we review for harmless error.

Under harmless error analysis, a trial court's erroneous evidentiary ruling that does not affect a substantial right of a party is to be disregarded. The trial court's evidentiary ruling will be deemed harmless only if a reviewing court can say with fair assurance that, in light of the entire record at trial, the error did not substantially influence the verdict or impair the fairness of the trial. *People v. Bowers,* 801 P.2d 511 (Colo.1990).

Hearsay statements are out-of-court declarations offered into evidence for the truth of the matter asserted. CRE 801(c). Hearsay statements are presumptively unreliable because the declarant is not present to explain the statement in context. Moreover, because the declarant is not subjected to cross-examination, the truthfulness of the statement is questionable. *Blecha v. People,* 962 P.2d 931 (Colo.1998).

Although the statement seems to qualify as a prototypical state of mind exception, there is cumulative evidence, even without M.C.'s testimony, that supports defendant's involvement in the conspiracy and attempt to kill P.M. Thus, even if M.C.'s testimony constituted inadmissible hearsay, we conclude that in light of M.C.'s cumulative testimony, it did not substantially influence the verdict or impair the fairness of the trial. *See People v. Bowers, supra.*

### II.

Defendant next contends that the trial court erred in admitting into evidence prior statements of a prosecution witness. We disagree.

### A.

The prosecution called A.V., who had been diagnosed with stage 2 cancer, as a witness at trial. She explained that her illness made it difficult for her to remember events that happened four years ago.

Nevertheless, A.V. testified that, on the day of the murder, E.G., E.M., V.M., and defendant were at her house. A.V. recalled that defendant was upset and angry. Although she testified that defendant talked to E.M., she could not remember specifically what defendant said. At this point, A.V. said that she felt lightheaded, but that she could finish her testimony.

The prosecution then asked her whether defendant came by her house the Tuesday after the murder and asked her to take a gun. Although she could not remember the exact day, she responded, "I think so." A.V. said that she did not remember why defendant wanted her to hold the gun, but "thought" that she had told police that defendant asked her to hold the gun because the police were searching "some of his stuff." She testified that she did not see the gun and that defendant was not holding anything at that time.

Defense counsel cross-examined A.V., but when she responded "I don't know" to several questions, defense counsel terminated the cross-examination. Before A.V. was excused, the court, at the request of the prosecution, ordered her to remain under subpoena.

The prosecution then called the detective who interviewed A.V. a few days after the murder. Defense counsel immediately objected, stating:

> I think what he is going to try to do is impeach the witness, but a predicate to that impeachment is that he needs to call to her attention, when she is on the witness stand, ... the particular statements she is alleged to have made and to whom they were made, and that didn't occur, so I would object to what I think he is going to try to do here, because there is not an adequate foundation for it.

Defendant's sole basis for objection was that the prosecution failed to follow the procedural requirements for impeaching a witness with a prior inconsistent statement under CRE 613. The prosecution, however, explained that the prior statements were introduced for the truth of the matter asserted under § 16–10–201, C.R.S.2003, not for impeachment purposes under CRE 613, and the court overruled defense counsel's objection.

Thereafter, the detective testified that A.V. made the following statements to him:

He was mad because an individual by the name of [P.M.] had shot at him just earlier in the day. And I asked exactly how mad [V.M.] and [defendant] were. She had given me the impression they might have both been there, but she had indicated that they were yelling. And I quoted her saying, that mother f* * * * * is ours, when referring to P.M., that they were going to go back—she thought they were going to go back, and I quoted her as, seek revenge for what had happened just a little bit ago with [P.M.]

. . . .

She described [V.M. and defendant] as being pissed. She said that, and I quoted her, we are going to kill that mother f* * * * *. . . . They were referring to [P.M.], that they were going to go and shoot them, get revenge for what had happened.

The detective also testified that A.V. said that, on the Tuesday after the murder, defendant came to her house around 3:30 p.m. and asked her whether she would be willing to hide a gun for him because the police were searching his shop and would be looking for a gun.

### B.

We reject defendant's assertion that A.V.'s prior statements were inadmissible under § 16–10–201 because the prior statements were not inconsistent with her trial testimony and constituted hearsay.

Because defendant did not object to the admission of the statement on these grounds, we review for plain error. *See People v. Kruse,* 839 P.2d 1 (Colo.1992).

CRE 613 states that, before a prior inconsistent statement may be admitted, the ex-

aminer "must call the attention of the witness to the particular time and occasion when, the place where, and the person to whom [the witness] made the statement," and further states that the witness's denial or failure to remember the prior statement "is a prerequisite for the introduction of extrinsic evidence to prove that the prior inconsistent statement was made." CRE 613 applies when a prior inconsistent statement is used for impeachment purposes only. *People v. Madril,* 746 P.2d 1329 (Colo.1987).

In contrast to CRE 613, § 16–10–201 permits the use of prior inconsistent statements to prove the truth of the matters asserted so long as the statutory foundation requirements for substantive admissibility have been satisfied. *Montoya v. People,* 740 P.2d 992 (Colo.1987).

Section 16–10–201 specifically allows proof of previous inconsistent statements by otherwise competent evidence not only for the purpose of impeaching the testimony of a witness, but also for the purpose of establishing a fact to which her testimony and the inconsistent statement relate. *Montoya v. People, supra.*

For the evidence to be used for both purposes, the witness, while testifying, must be given the opportunity to explain or deny the statement, or must still be available to give further testimony in the trial, and the previous inconsistent statement must relate to a matter within the witness's own knowledge. *Montoya v. People, supra.* When the foundational requirements have been satisfied, the prior inconsistent statements are admissible for all purposes in a criminal trial. *People v. Madril, supra.*

The requirement of a prior inconsistent statement is satisfied if the witness either denies or cannot recall the transaction or event in issue. *People v. Allee,* 77 P.3d 831 (Colo.App.2003); *People v. Aguirre,* 839 P.2d 483 (Colo.App.1992).

Here, the prosecution satisfied the foundational requirements of § 16–10–201 before presenting the detective's testimony about A.V.'s prior inconsistent statements to him. First, A.V. testified at trial that she could not recall what defendant said on the night of the

murder or why defendant wanted her to hold the gun. Thus, the requirement of a prior inconsistent statement was satisfied. *See People v. Allee, supra.* Second, because A.V. remained under subpoena, she was available to give further trial testimony after the admission of her prior inconsistent statements. Last, because she remembered that defendant was at her house and made statements on the day of the murder, and that defendant came to her house after the murder to ask her to hide a gun, A.V. had personal knowledge of the prior statements.

The trial court, pursuant to § 16–10–201, properly admitted the prior inconsistent statements for all purposes.

### C.

■ We also reject defendant's assertion that the detective's testimony regarding A.V.'s statements violated defendant's federal and state constitutional rights to confrontation because A.V. was unable to recall her statements at trial.

Because defendant did not object to the admission of the statement on confrontation grounds, we review for plain error. *See People v. Kruse, supra.*

Defense counsel had the opportunity to cross-examine A.V. about her statements, and A.V. was available for further testimony. Accordingly, there was no violation of defendant's confrontation rights. *See People v. Pineda,* 40 P.3d 60 (Colo.App.2001)(no denial of confrontation rights where the hearsay declarant testified at trial and was subject to cross-examination); *see also Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The fact that at the time of trial A.V. no longer recalled the statements or events does not alter this conclusion. *See United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988); *People v. Allee, supra.*

### III.

Defendant contends that the evidence was insufficient to support his conviction for tampering with physical evidence. We disagree.

When assessing the sufficiency of the evidence in support of a finding of guilt, we must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might fairly be drawn from the evidence. *People v. Gonzales,* 666 P.2d 123 (Colo.1983).

The elements of tampering with physical evidence are set out in § 18–8–610, C.R.S. 2003, which provides:

> (1) A person commits tampering with physical evidence if, believing that an official proceeding is pending or about to be instituted and acting without legal right or authority, he:
>
> (a) Destroys, mutilates, conceals, removes, or alters physical evidence with intent to impair its verity or availability in the pending or prospective official proceeding. . . .

Here, the instruction given to the jury mirrors the language of the statute and the pattern jury instruction.

■ The evidence established that several days after the murder, a detective interviewed defendant, who denied that he had a gun, that there had been a gun in his car, and that someone had fired a gun while in his car. After the interview, the detective informed defendant that he would seek a search warrant for defendant's car and shop.

Later that day, defendant went to A.V.'s home and asked her whether she would hide a gun because the police were searching his shop and would be looking for a gun. A.V. did not see a gun and declined the request. No gun was ever found.

We conclude that this evidence supports the jury's finding that defendant, believing that an official proceeding was about to be instituted, and acting without legal authority, either destroyed, concealed, or removed the gun with the intent to impair its availability in the prospective official proceeding.

### IV.

■ Defendant next contends that the jury verdicts finding him guilty of conspiracy and attempt to commit first degree murder

of P.M. after deliberation and with extreme indifference are legally inconsistent. Defendant asserts that, if the evidence establishes that a defendant conspired and attempted to kill a specific person, the evidence cannot support a finding that the defendant conspired and attempted to commit first degree extreme indifference murder of that same individual. We agree.

Contrary to the People's contention, defendant raised this issue in the trial court. Defendant tendered jury instructions specifically providing that he could be convicted of conspiracy and attempt to commit first degree murder of P.M. under either theory, but not both, and moved for a judgment of acquittal on the ground that the two theories were mutually exclusive.

■ Our inquiry is whether the instructions contributed to the verdicts ultimately rendered or undermined the fundamental fairness of the trial. *People v. Harlan*, 8 P.3d 448 (Colo.2000).

■ Guilty verdicts are legally and logically inconsistent if the existence of an element of one crime negates the existence of a necessary element of the other crime. *People v. Frye*, 898 P.2d 559 (Colo.1995).

A.

We first discuss the difference between first degree murder after deliberation and first degree extreme indifference murder.

■ On the one hand, under § 18–3–102(1)(a), C.R.S.2003, a person commits first degree murder after deliberation by killing a person "[a]fter deliberation and with the intent to cause the death" of that person or another. To commit first degree murder in this manner, therefore, requires the specific intent to kill a particular individual. *People v. Atkins*, 844 P.2d 1196 (Colo.App.1992).

On the other hand, the crime of extreme indifference murder is a general intent crime and requires that (1) under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally, (2) the defendant knowingly engages in conduct that creates a grave risk of death to a person, or persons, other than himself or herself and (3) thereby

causes the death of another. Section 18–3–102(1)(d), C.R.S.2003.

■ Thus, while murder after deliberation requires a specific intent to cause death, the extreme indifference murder statute contains no such element. Rather, the conduct proscribed by § 18–3–102(1)(d) is extreme recklessness, evidencing an indifference to human life generally. *People v. Atkins, supra.*

■ Furthermore, the extreme indifference murder statute expressly incorporates the concept of "universal malice," which is defined as that "depravity of the human heart, which determines to take life upon slight or insufficient provocation, *without knowing or caring who may be the victim.*" *People v. Jefferson*, 748 P.2d 1223, 1228 (Colo.1988)(emphasis added)(quoting *Longinotti v. People*, 46 Colo. 173, 181, 102 P. 165, 168 (1909)). Universal malice is evinced by acts that are calculated to put the lives of many persons in danger, without being aimed at anyone in particular. *People v. Ellis*, 30 P.3d 774 (Colo.App.2001). The killing conduct must be of a type that is *not directed against a particular person*. *People v. Perez*, 972 P.2d 1072 (Colo.App.1998); *People v. Atkins, supra.*

■ Accordingly, murder after deliberation is committed only if the perpetrator's malice is directed toward a single, identifiable individual, while extreme indifference murder requires proof of malice against human life "generally," a "universal malice" not directed against a single individual. *People v. Atkins, supra.*

■ Thus, if the evidence establishes that a perpetrator possessed the specific intent to cause the death of the person whom he killed, then the death of that individual can support a conviction under the murder after deliberation statute, but cannot support a conviction under the extreme indifference murder statute. *People v. Atkins, supra.*

■ It logically follows that, if the evidence establishes that a perpetrator conspired or attempted to cause the death of a specific, identifiable person, then the evidence can support convictions for conspiracy and attempt to commit first degree murder

after deliberation, but cannot support a conviction for conspiracy and attempt to commit first degree extreme indifference murder of that same, identifiable individual.

■ This conclusion, however, does not prohibit the People from *charging* that a defendant committed the crimes of conspiracy and attempt to commit first degree murder under both statutes, as *alternative* theories. It means that evidence of conspiracy and attempt to kill a single individual cannot support a finding that the defendant conspired and attempted to kill that same individual with extreme indifference. Thus, when it is appropriate to submit both theories to the jury for its determination, such submission must be accompanied by an instruction that the jury may convict of conspiracy and attempt to commit first degree murder under either theory, but not under both. *See People v. Atkins, supra.*

Here, such an instruction was not given with respect to the charges of conspiracy and attempt to commit first degree murder of P.M. On the contrary, the jury expressly was authorized to find that defendant committed the crimes of conspiracy and attempt to commit first degree murder of P.M. both after deliberation and with extreme indifference.

Indeed, the jurors determined, by their special findings, that defendant conspired and attempted specifically to kill P.M. At the same time, however, they found that, with respect to P.M., defendant conspired and attempted to act with "universal" malice, manifesting an indifference to human life "generally," and creating a grave risk of death to other "persons." In our view, these findings are logically inconsistent and contradictory. *See People v. Atkins, supra.*

The determination here that defendant conspired and attempted specifically to kill P.M. necessarily negated the existence of an act with universal malice and aggravated recklessness creating a risk to other persons and a general indifference to human life, all of which were required to convict for extreme indifference murder. Conversely, the jury's simultaneous determination that, with regard to P.M., defendant conspired and attempted to commit extreme indifference murder with aggravated recklessness and a general indifference to human life, accompa-

nied by universal malice, necessarily negated the existence of any conspiracy and attempt specifically to kill P.M. These findings are, by their nature, logically inconsistent. *See People v. Atkins, supra.*

B.

■ However, we conclude that, because defendant received only one conviction and sentence for each of the conspiracy and attempt convictions, he was not prejudiced by the inconsistent verdicts.

The special findings here do not address separate crimes. Rather the jury was presented with murder after deliberation and extreme indifference murder as two alternative methods of committing the singular crimes of conspiracy and attempt to commit first degree murder. *See People v. Atkins, supra.*

The record here contains sufficient evidence to support the jury's finding of the existence of a conspiracy and attempt specifically to kill P.M. Therefore, defendant should not have been convicted of conspiracy and attempt to commit extreme indifference murder of P.M.

Accordingly, the case is remanded with directions to vacate the judgments of conviction for conspiracy and attempt to commit first degree extreme indifference murder of P.M. The judgments of conviction for conspiracy and attempt to commit first degree murder of P.M. after deliberation may stand. Likewise, defendant's conviction of one count of first degree extreme indifference murder of the victim must be vacated, and the case is remanded with directions to amend the mittimus to reflect that defendant has been convicted of one count of first degree murder after deliberation and is sentenced to life imprisonment. *See People v. Glover,* 893 P.2d 1311 (Colo.1995).

V.

We reject defendant's assertion that the complicity instruction given by the trial court was incorrect as a matter of law.

Because defendant failed to object to the trial court's jury instructions, we review for

plain error. *See People v. Garcia,* 28 P.3d 340 (Colo.2001)(the defendant must demonstrate that the instructions affected a substantial right and that a reasonable possibility exists that the error contributed to his conviction).

The jury instruction on the theory of complicity read, in pertinent part:

> To be guilty as a complicitor, the following must be established beyond a reasonable doubt:
>
> 1. A crime must have been committed.
>
> 2. Another person must have committed all or part of the crime.
>
> 3. The defendant must have had knowledge that the other person intended to commit all or part of the crime.
>
> 4. The defendant must have had the intent to promote or facilitate the commission of the crime.
>
> 5. The defendant must have aided, abetted, advised, or encouraged the other person in the commission or planning of the crime.

### A.

First, defendant argues that the trial court failed to instruct the jury that complicity liability does not apply to attempted first degree murder because one cannot aid and abet another in the commission of a crime unless the crime was completed. We disagree.

### 1.

A person is guilty of attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense. Section 18–2–101(1), C.R.S.2003.

■ Attempt is a substantive offense and is complete once the actor intentionally takes a substantial step towards the commission of the crime. *People v. Gandiaga,* 70 P.3d 523 (Colo.App.2002); *People v. Close,* 867 P.2d 82 (Colo.App.1993). Moreover, a person who engages in conduct intending to aid another to commit an offense commits criminal attempt if the conduct would establish his complicity under § 18–1–603, C.R.S.2003. Section 18–2–101(2), C.R.S.2003; *People v. Harris,* 892 P.2d 378 (Colo.App.1994).

■ Where a defendant is charged with attempted first degree murder, the "substantial step" element requires proof of the intent to commit first degree murder. *See People v. Ramos,* 708 P.2d 1347 (Colo.1985)(attempted extreme indifference murder); *People v. Beatty,* 80 P.3d 847 (Colo.App.2003)(attempted first degree murder after deliberation).

■ Colorado courts have recognized that complicity liability applies to attempt offenses. *See, e.g., Nicholas v. People,* 973 P.2d 1213 (Colo.1999)(the defendant was convicted under a complicity theory of attempted aggravated robbery); *People v. Medina,* 72 P.3d 405 (Colo.App.2003)(complicity instruction applied to attempted robbery charge, and the defendant was convicted as a complicitor of attempted robbery); *People v. Close, supra* (the jury required to find that the defendant had knowledge that the principals intended to commit aggravated robbery and attempted aggravated robbery).

Thus, contrary to defendant's argument, attempted murder is not an inchoate crime.

### 2.

■ Complicity is not a separate and distinct crime. Complicity liability exists when (1) the complicitor has the culpable mental state required for the underlying crime committed by the principal, and (2) the complicitor assists or encourages the commission of the crime committed by the principal with the intent to promote or facilitate such commission. *Bogdanov v. People,* 941 P.2d 247, *amended,* 955 P.2d 997 (Colo.1997).

■ Conviction as a complicitor requires proof that (1) a crime has been committed; (2) another person committed all or part of the crime; (3) the complicitor had knowledge that the other person intended to commit the crime; and (4) the complicitor aided, abetted, advised, or encouraged the principal. Section 18–1–603; *People v. Harris, supra.*

■ Accordingly, to convict defendant of attempted murder as a complicitor, defendant must have had the culpable mental state required for attempted murder and must have intended that his own conduct promote or facilitate the commission of attempted

first degree murder committed by the principal.

### B.

▮ Defendant next asserts that the language of the complicity instruction, "[a]nother person must have committed all or part of the crime," allowed the jury to convict even if the principal failed to commit all elements of the crime or if defendant were aware only of the principal's intent to commit a lesser offense. We are not persuaded.

In *Bogdanov v. People, supra,* the supreme court distinguished between those cases in which two or more persons jointly commit a crime by each performing a part of the offense and those cases in which a principal commits the entire crime, and the complicitor aids and abets in that crime. In this latter circumstance, the type at issue here, if the principal committed the crime in its entirety and the complicitor did not perform any of the elements of the offense, then the inclusion of the "all or part" language of the instruction is superfluous, and any error is harmless. *See Bogdanov v. People, supra; People v. Osborne,* 973 P.2d 666 (Colo.App. 1998).

Here, the jurors were instructed to determine whether defendant knew that the other person intended to commit the underlying offenses and whether defendant intended his actions to aid and abet that person in committing those offenses. By its verdict, the jury necessarily found that defendant knew that another person intended to kill P.M. and shoot into P.M.'s car. Further, to find him guilty of complicity, the jury necessarily determined that he had the mental state required for the underlying offenses of which he was convicted and that he intended his actions to aid and encourage the other person to commit the underlying offenses in their entirety, rather than intending commission of part of the offenses or of lesser included offenses.

Thus, inclusion of the "all or part" language of the complicity instruction was not error. *See Bogdanov v. People, supra; People v. Rodriguez,* 914 P.2d 230 (Colo.1996); *People v. Osborne, supra.*

### C.

▮ Defendant further argues that the complicity instruction failed to advise the jury that to convict him of first degree murder after deliberation under a complicity theory, it must find that, in addition to acting intentionally, he acted after deliberation. We find no error in the jury instruction.

The complicity instruction provided that "defendant must have had the intent to promote or facilitate the commission of the crime."

The jury instruction for first degree murder after deliberation provided that (1) the defendant (2) in the State of Colorado, at or about the date and place charged, (3) *with intent,* (4) to cause the death of a person other than himself, and (5) *after deliberation,* (6) caused the death of that person or another person, (7) without the affirmative defense in instruction number 14, 15 and 16.

Thus, when the instructions are read together, the jury was adequately advised that to be guilty of first degree murder after deliberation as a complicitor, defendant must have had the requisite mens rea for first degree murder—intent to kill a person after deliberation. *See Gann v. People,* 736 P.2d 37 (Colo.1987).

### D.

Defendant also contends that the trial court erred in failing to instruct the jury that he could not be found guilty of first degree murder after deliberation as a complicitor because the principal shot and killed an unintended victim. We disagree.

The first degree murder statute incorporates the doctrine of transferred intent and holds a principal liable for the death of an unintended victim. *See* § 18–3–102(1)(a) (a person commits first degree murder after deliberation where "[a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person").

Complicitor liability is not a theory of strict liability and is limited to those particular crimes that the complicitor intended to promote or facilitate. Section 18–1–603.

Although some jurisdictions hold an accomplice liable for any crimes that are a reasonably foreseeable consequence of the crime which the accomplice intended to aid or encourage, *see* Me.Rev.Stat. Ann. tit. 17–A, § 57 (West 1983), the Colorado General Assembly chose not to extend accomplice liability to reasonably foreseeable crimes, but rather limited such liability to those particular crimes that the accomplice intended to promote or facilitate. *See* § 18–1–603; *Bogdanov v. People, supra,* 941 P.2d at 251–52, n. 8.

■ We conclude that a person who intends to aid the principal in committing murder and who possesses the intent to murder a person is criminally liable for the killing of an unintended third party by the principal. The killing of an unintended person is within the scope of the "particular crimes" that the perpetrators conspired to promote or facilitate—first degree murder. To adopt defendant's argument would provide an absurd result where the principal would be guilty of first degree murder of an unintended victim while a complicitor, who assists in facilitating and promoting the crime, is exonerated. This result would defeat the purpose of the complicity statute, which provides that a complicitor is "legally accountable as principal." Section 18–1–603; *see also People v. Fisher,* 9 P.3d 1189 (Colo.App.2000).

## VI.

■ Defendant asserts that the trial court committed reversible constitutional error by failing to instruct the jury that it may consider evidence of self-defense in determining whether defendant committed first degree extreme indifference murder. We perceive no error.

Extreme indifference murder requires proof that a defendant acted "[u]nder circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally." Section 18–3–102(1)(d). The supreme court has defined the element of "universal malice" as aggravated or extremely reckless conduct. *People v. Jefferson, supra.*

If an element of a charged crime is that the defendant acted in a reckless manner, and the trial court instructs the jury as to every element of the crime, then a self-defense instruction is not required. This principle is based upon the rationale that, for certain actions to constitute self-defense, not only must the defendant reasonably believe that his actions were justified, but also the defendant must act in a reasonable manner. Thus, a jury finding of reckless conduct does not allow a finding that a defendant acted reasonably. *People v. Fink,* 194 Colo. 516, 574 P.2d 81 (1978).

Therefore, the charge of extreme indifference murder is inconsistent with the affirmative defense of self-defense. Finding a defendant guilty of extreme indifference murder necessarily precludes a finding that his actions were reasonable, as the "universal malice" element of the offense requires the jury to conclude that the defendant acted with aggravated recklessness. *People v. Ellis, supra* (the affirmative defense of self-defense is not consistent with attempted first degree extreme indifference murder); *People v. Fernandez,* 883 P.2d 491 (Colo. App.1994).

However, this does not mean that a defendant may not present evidence that he acted in self-defense. Rather, "[s]uch evidence may be considered by the jury in its determination of whether the defendant was acting recklessly or in a criminally negligent manner." *People v. Fink, supra,* 194 Colo. at 519, 574 P.2d at 83.

If the record contains any evidence tending to establish the defense of self-defense, the defendant is entitled to have the jury properly instructed with respect to that defense. A trial court must tailor instructions to the particular circumstances of a given case when the pattern instructions, taken as a whole, do not adequately apprise the jury of the law of self-defense from the standpoint of the defendant. *Idrogo v. People,* 818 P.2d 752 (Colo.1991).

Here, defendant tendered the following instruction:

Conduct which is justifiable as self-defense cannot also be criminal. Thus, even with respect to charges that do not feature self-defense as elemental affirmative defenses, you may consider evidence of self-defense

in determining whether defendant has been proved guilty of the charged offense.

The trial court refused to give this instruction, but instructed the jury regarding defendant's theory of the case:

It is defendant's theory of the case that he is not guilty of murder, attempted murder, because he and his vehicle occupants acted justifiably in self-defense. At the time of the nighttime confrontation, gunshots coming from [P.M.'s car] constituted either real or apparent first- or second-degree assault, to which defendant and his peers were lawfully justified in responding with force, even deadly physical force, and continuing to so respond until the threat abated.

The theory of the case instruction expressly permitted the jury to consider evidence of self-defense with respect to the murder and attempted murder charges and did not distinguish between the theories of after deliberation and extreme indifference. Thus, we perceive no error in the instruction regarding self-defense.

## VII.

Finally, defendant asserts that the conviction on the crime of violence count lacked unanimity because the jury may have been divided over the method used to commit the crime of violence. We disagree.

Because defendant did not object to either the instruction or the verdict form at trial, we review for plain error. *See People v. Guffie*, 749 P.2d 976 (Colo.App.1987).

Unanimity in a verdict does not mean that jurors are required "to be in agreement as to what particular evidence is believable or probative on a specific issue or element of a crime, particularly where there is evidence to support alternative theories as to how an element of a crime came to occur." Rather, "[u]nanimity [requires] only that each juror agrees that each element of the crime charged has been proven to that juror's satisfaction beyond a reasonable doubt." *People v. Lewis*, 710 P.2d 1110, 1116 (Colo. App.1985).

However, due process does not require alternative theories presented to the jury to be proved beyond a reasonable doubt, provided evidence is sufficient to support conviction on one theory. *People v. Dunaway*, 88 P.3d 619 (Colo.2004).

Here, the trial court instructed the jury that, if it found, beyond a reasonable doubt, defendant guilty of first degree murder, conspiracy to commit first degree murder, or attempt to commit first degree murder, it should consider the crime of violence instruction. The crime of violence instruction mirrored the language in § 18–1.3–406(2)(a)(I), C.R.S.2003 (formerly § 16–11–309), and provided that the jury must find that defendant "used, or possessed and threatened the use of a deadly weapon *or* caused serious bodily injury or death to any person except another participant."

The verdict form reflected that defendant was convicted of a crime of violence by use of a deadly weapon *and* resulting in the death of the victim. There is sufficient evidence in the record that the principal killed the victim with a deadly weapon, and therefore defendant, as a complicitor, is criminally responsible for the principal's actions. *See People v. Swanson*, 638 P.2d 45 (Colo.1981)(complicitor subject to enhanced sentence under crime of violence statute even though he did not personally commit any of the acts described by it).

The judgments of conviction and sentences for first degree extreme indifference murder of the victim, conspiracy to commit first degree extreme indifference murder of P.M., and attempt to commit first degree extreme indifference murder of P.M. are vacated, and the case is remanded to the trial court for correction of the mittimus in accordance with this opinion. The remaining judgments of conviction and sentences are affirmed.

Judge TAUBMAN and Judge HUME * concur.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.