COLORADO COURT OF APPEALS 2016COA93

Court of Appeals No. 15CA0080
El Paso County District Court No. 10CR4367
Honorable David S. Prince, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert Lee Hunt,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE DAILEY
Taubman and Sternberg*, JJ., concur

Announced June 16, 2016

Cynthia H. Coffman, Attorney General, John T. Lee, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Elizabeth Stovall, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶ 1    Defendant, Robert Lee Hunt, appeals the district court's order denying his Crim. P. 35(c) motion for postconviction relief. We reverse and remand for an evidentiary hearing on two ineffective assistance of counsel claims.

## I.    Background

¶ 2    Defendant was charged with first degree "after deliberation" murder, first degree "extreme indifference" murder, conspiracy to commit murder, possession of a weapon by a previous offender, and three crime of violence (sentencing enhancement) counts. Pursuant to a plea agreement, defendant pleaded guilty to an added count of second degree murder and to one of the original crime of violence counts in exchange for (1) the dismissal of the remaining charges and (2) a stipulated sentence of between thirty and forty years imprisonment in the Department of Corrections.

¶ 3    At defendant's January 2012 providency hearing, plea counsel provided the court with the following factual basis for the second degree murder charge for which defendant was about to plead guilty:

> [O]n July 28, [2010], [defendant] was the
> victim of a home invasion, not . . . knowing
> exactly who were the perpetrators of the home

1

invasion. [Defendant] along with an[other] individual [(the shooter)] . . . decided that the people responsible for the home invasion would be killed. [Defendant] utilized [the shooter] because [the shooter] had a weapon. On the night of the murder, [the shooter] told [defendant] that one of the robbers of the home invasion was located at [an apartment complex].

They proceeded then to [the apartment complex] . . . [and] saw an individual standing outside. [The shooter] believed that to be one of the home invaders so [the shooter] called [the individual] over to the car.

[Defendant] said, that's not one of the guys that did the home invasion. However, then [the shooter] had a conversation with this individual . . . [and] then shot [him].

¶ 4    In March and July 2012, defendant wrote two letters to the district court, asking to withdraw his guilty plea. In his letters, defendant asserted that (1) he was not guilty of murder because he had not intended for the shooter to kill the victim; and (2) his attorney had erroneously advised him that he could, if tried, be found guilty (and sentenced to life imprisonment) under a complicity theory.

¶ 5    On July 19, 2012, plea counsel filed a motion to withdraw from the case based on an alleged conflict of interest and requested

2

the court allow defendant to withdraw his guilty plea. The motion, which was very short, was based on defendant's assertion that he had received ineffective assistance of counsel.[1] On July 30, 2012, the court held a hearing on the motion; found no conflict of interest between counsel and defendant; and directed counsel to file, on defendant's behalf, a Crim. P. 32(d) motion to withdraw guilty plea.

¶ 6 Three days later — the day before sentencing — plea counsel filed the Crim. P. 32(d) motion, in which she noted:

- Defendant had "previously requested to withdraw his [guilty] plea due to an ineffective counsel/conflict claim. A conflict hearing was held and the court at that time determined there was no conflict nor was there a showing that counsel was ineffective."

- Defendant "contends that he was never fully advised of the definition of complicity by counsel. [He] contends that he never understood that complicity required that he have actual knowledge that the other person intended to commit all or part of the crime. He also "contends that

---

[1] Counsel related that because of the attorney-client privilege, she was not at liberty to disclose in the motion the specifics of the conflict between her and defendant.

he thought being at the scene of the crime was enough for conviction under a complicity theory" but, after doing his own research, realizes that "mere presence is not enough to result in a complicity conviction [sic]."

- Defendant "contends that he had no knowledge that the codefendant in this case was going to shoot the victim" and therefore he "could not be found guilty of murder pursuant to a complicity theory, nor could he be convicted as the principal since he did not fire the weapon that killed the victim."

- If defendant "fail[ed] to understand the requirements of complicity" as he contended, then he "did not have an adequate understanding of what he was pleading to [and] . . . has a fair and just reason to withdraw his plea."

¶ 7    Without addressing the Crim. P. 32(d) motion, the district court sentenced defendant to a term of forty years imprisonment in the custody of the Department of Corrections.

¶ 8    Subsequently, defendant filed two pro se Crim. P. 35(c) motions for postconviction relief based on claims of ineffective assistance of plea counsel.  As pertinent here, defendant alleged

4

that he had pleaded guilty based on counsel's incorrect advice that he could be found guilty of murder as a complicitor simply because he was present when a person he had not intended to be killed was killed.

¶ 9     The district court appointed defendant new counsel, who subsequently filed a supplemental motion (1) expounding on defendant's pro se arguments and (2) asserting that plea counsel was also ineffective in failing to advise defendant that he could appeal the apparent denial of the Crim. P. 32(d) motion.[2]

¶ 10     Without holding a hearing, the court denied the Crim. P. 35(c) motions for postconviction relief.  In its written order, the court found, in pertinent part, that

- under the facts recited at the providency hearing, the law of complicity, and the doctrine of transferred intent applied in *People v. Candelaria,* 107 P.3d 1080, 1091-92 (Colo. App. 2004), *aff'd in part and rev'd in part,* 148 P.3d 178 (Colo. 2006), counsel's advice was accurate; and

_____

[2] Defendant also alleged other grounds of ineffective assistance of counsel.  Because, however, he does not address those other grounds in his appeal, they are deemed abandoned and will not be addressed here.  *See People v. Brooks,* 250 P.3d 771, 772 (Colo. App. 2010).

- even assuming plea counsel failed to advise defendant of his right to appeal from a denial of a motion to withdraw guilty plea, defendant was not entitled to relief because he "identifie[d] no plausible appellate challenge to the denial of his request to withdraw his plea."

## II.   Ineffective Assistance of Plea Counsel

¶ 11    On appeal, defendant contends that the court erred in summarily denying his postconviction motion. Specifically, he asserts that he was at least entitled to a hearing on his assertions that plea counsel was ineffective for (1) inaccurately advising him of the requisite elements of the offense to which he pleaded and (2) failing to advise him that he could appeal the court's denial of his Crim. P. 32(d) motion. We agree.

¶ 12    Ineffective assistance of counsel may constitute an adequate ground for relief under both Crim. P. 32(d) and 35(c). *People v. Lopez*, 12 P.3d 869, 871 (Colo. App. 2000).[3]

---

[3] "[A Crim. P. 32(d)] motion to withdraw a plea of guilty may only be made before sentence is imposed or imposition of sentence is suspended. . . . [A]fter sentence has been imposed, the validity of a guilty plea can be challenged under Crim. P. 35(c)." *People v. Dawson*, 89 P.3d 447, 449 (Colo. App. 2003) (citation omitted).

¶ 13    To prevail on a claim of ineffective assistance of counsel, a defendant must establish that (1) counsel's performance fell below the level of reasonably competent assistance demanded of attorneys in criminal cases and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007).

¶ 14    A motion raising ineffective assistance of counsel may be denied without a hearing "if, but only if, the existing record establishes that the defendant's allegations, even if proven true, would fail to establish one or the other prong of the *Strickland* test." *Ardolino v. People*, 69 P.3d 73, 77 (Colo. 2003).

> If a criminal defendant has alleged acts or omissions by counsel that, if true, could undermine confidence in the defendant's conviction or sentence, and the motion, files, and record in the case do not clearly establish that those acts or omissions were reasonable strategic choices or otherwise within the range of reasonably effective assistance, the defendant must be given an opportunity to prove they were not.

*Id.*

## A. Pre-Plea Advice

¶ 15    Initially, defendant asserts that (1) plea counsel improperly advised him that "neither *mens rea* nor *actus reus* was an element of the offense to which he pled"; and (2) had he (defendant) known there was a *mens rea* element to the crime, he would not have pleaded guilty. The record, however, refutes defendant's assertion that he did not know that there was a *mens rea* element to the crime with which he was charged.

¶ 16    The prosecution pursued charges against defendant on a complicity theory — a theory by which a person is held accountable for a criminal offense committed by another. *People v. Theus-Roberts*, 2015 COA 32, ¶ 35. Under the complicity statute, "[a] person is legally accountable as [a] principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advises, or encourages the other person in planning or committing the offense." § 18-1-603, C.R.S. 2015. As pertinent in this case, "[a] person commits the crime of murder in the second degree if the person *knowingly* causes the death of a person." § 18-3-103(1), C.R.S. 2015 (emphasis added).

¶ 17      At the providency hearing, the court specifically informed

defendant that the crime to which he was about to enter a plea had

*mens rea* components:

> THE COURT: "So let me talk to you a little bit about the elements here that the defendant, that is you, in the State of Colorado, on or about July 30, 2010 *knowingly* caused the death of another person, that person would be [the victim]. . . .
>
> . . . .
>
> . . . Now I've talked to your counsel earlier kind of what the theory is here. I'll talk to you a little bit about it as well. But it's written here per complicity and I'm sure that [plea counsel] has talked to you a little bit about what that means.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Complicity just generally a crime must have been committed, another person must have committed all or part of the crime. *The defendant must have had knowledge that the other person intended to commit all or part of that crime and the defendant must have the intent to promote or facilitate the commission of the crime* and the defendant must have aided, abetted, advised or encouraged the person in the plan of committing the crime without any potential affirmative defenses so that's generally what complicity means.
>
> . . . .

9

> Have you talked generally with your counsel about these concepts . . . of complicity and conspiracy?
>
> THE DEFENDANT: Yes.

(Emphasis added.)

¶ 18    But, defendant asserts, neither the court nor plea counsel informed him that to be guilty as a complicitor, he must have known that another person was going to kill the victim and he must have intended, by his own conduct, to promote or facilitate the other person's act of killing that victim — circumstances which were lacking under the factual basis provided by plea counsel.[4] Defendant went forward with the plea, he says, only because plea counsel "told him he could be found guilty simply based on his presence in the car when [the shooter] shot [the victim]."

¶ 19    The district court assumed that counsel had advised (or failed to advise) defendant as defendant alleged counsel did, and it determined that counsel's advice or lack of advice did not constitute deficient performance on her part. The district court reached this

---

[4] The "dual intent" requirement upon which defendant relies comes from *Bogdanov v. People*, 941 P.2d 247, 250-51 (Colo. 1997), *amended*, 955 P.2d 997 (Colo. 1997). The supreme court, however, has since altered that requirement. *See People v. Childress*, 2015 CO 65M, ¶¶ 30, 34.

10

conclusion based on the *Candelaria* division's discussion of how complicity operates in conjunction with the doctrine of "transferred intent." In this regard, the *Canderlaria* division wrote:

> We conclude that a person who intends to aid the principal in committing murder and who possesses the intent to murder a person is criminally liable for the killing of an unintended third party by the principal. The killing of an unintended person is within the scope of the "particular crimes" that the perpetrators conspired to promote or facilitate — first degree murder. To adopt defendant's argument would provide an absurd result where the principal would be guilty of first degree murder of an unintended victim while a complicitor, who assists in facilitating and promoting the crime, is exonerated. This result would defeat the purpose of the complicity statute . . . .

107 P.3d at 1092.

¶ 20    On appeal, defendant contends that the district court erred (1) in determining that the doctrine of transferred intent applies to crimes other than first degree murder (which was the charge in *Candelaria*) or (2) in its application of the transferred intent doctrine. We reject defendant's first point but agree with his second.

11

¶ 21    In *Candelaria*, the division recognized that the first degree murder statute, by its terms, "incorporates the doctrine of transferred intent and holds a principal liable for the death of an unintended victim." *Id.* at 1091; *see* § 18-3-102(1)(a), C.R.S. 2015 (A person commits first degree murder after deliberation where "[a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person *or of another person.*") (emphasis added).

¶ 22    Defendant points out that the second degree murder statute does not contain such language. Nevertheless, in *People v. Marcy*, 628 P.2d 69 (Colo. 1981), the supreme court concluded that the doctrine of transferred intent applies to second degree murder:

> There is no requirement that the knowing conduct essential to extreme indifference murder and second degree murder be directed against the person actually killed. On the contrary, both offenses are general intent crimes, and as long as the offender knowingly acts in the proscribed manner and causes the death of another, he is guilty of the crime even though the person killed is not the person against whom the criminal conduct was directed.

*Id.* at 79 (citation omitted).

¶ 23    Although the second degree murder statute was amended after

*Marcy* was decided, the statutory change did not alter the general

intent requirement described in *Marcy*.  *See* Ch. 295, sec. 12, § 18-

3-103, 1996 Colo. Sess. Laws 1844.  Therefore, we are bound by

this holding.  *See People v. Allen*, 111 P.3d 518, 520 (Colo. App.

2004) (noting the Colorado Court of Appeals is "bound by the

decisions of the Colorado Supreme Court").

¶ 24    Turning to the court's application of the transferred intent

doctrine, we note that

> [t]he doctrine . . . is a legal fiction that is used
> to hold a defendant criminally liable to the full
> extent of his or her criminal culpability.
> Traditionally, the transferred intent theory has
> been applied in so-called "bad aim" situations
> where a defendant, while intending to kill one
> person, accidentally kills an innocent
> bystander or another unintended victim. . . .
> Thus, the perpetrator's intent to kill or injure a
> specific victim transfers to the unintended
> victim.
>
>  . . . The purpose of the doctrine is to impose
> criminal liability upon an actor when he or she
> intends to commit a criminal act, and "the
> actual result differs from the result designed or
> contemplated only in that a different person or
> property was injured or affected."

*State v. Fekete*, 901 P.2d 708, 714 (N.M. 1995) (citations omitted) (quoting Model Penal Code § 2.03(2)(a) cmt. 3 (1985)); *see People v. Fernandez*, 673 N.E.2d 910, 913 (N.Y. 1996) ("The doctrine of 'transferred intent' serves to ensure that a person will be prosecuted for the crime he or she intended to commit even when, because of bad aim or some other 'lucky mistake,' the intended target was not the actual victim." (quoting *People v. Birreuta*, 208 Cal. Rptr. 635, 639 (Cal. Ct. App. 1984))).

¶ 25 In *Candelaria*, the defendant and others sought to find and kill a particular individual with whom they had earlier exchanged gunfire; when they saw that individual's car, the defendant's passenger opened fire at it, killing not that individual but someone else. 107 P.3d at 1084. As defendant points out, that was a classic transferred intent scenario: the perpetrator (the passenger in the car) missed his intended target and hit someone else.

¶ 26 Here, taking as true the facts presented at the providency hearing, there was no unintended victim, within the meaning of the transferred intent doctrine. There was no mistake, on the part of the shooter: he did not think he was shooting someone else, nor did he try to shoot someone else but accidentally hit the victim.

Instead, the shooter meant to kill the very person that he did kill, and that person was not someone defendant wanted to kill.

¶ 27     The district court viewed the "transferred intent" doctrine from defendant's perspective — that is, that he had intended to kill a particular person but not the victim.  But the People have cited no authority, and we have found none, applying the "transferred intent" doctrine from the perspective of a person who was not the one who actually committed the crime itself.  To the contrary, at least one commentator has noted that when, as was alleged here, "the direct perpetrator deliberately changes the object of the offence, the doctrine of transferred malice does not apply to the indirect participant despite the fact that from his point of view the displacement of harm was accidental."  Shachar Eldar, *Examining Intent Through the Lens of Complicity*, 28 Can. J.L. & Juris. 29, 42 (2015).[5]

---

[5] In the course of his article, Eldar presented three scenarios where the "Direct Perpetrator [of a Crime] Caused a Change of Object"; noted that "English law . . . distinguished deviation caused by accident (scenario 4) or mistake (scenario 5) from deliberate deviation (scenario 6)"; and explained that "the indirect participant is not liable if the direct perpetrator deviated purposefully from the plan, as, for example, if he received a knife to kill A and resolves to use the knife to kill B instead."  Shachar Eldar, *Examining Intent*

¶ 28    Nor would "complicity" principles necessarily make defendant responsible for second degree murder under the facts presented at the providency hearing.  In *Bogdanov v. People*, 941 P.2d 247 (Colo. 1997), *amended*, 955 P.2d 997 (Colo. 1997), the supreme court noted:

> [S]ome jurisdictions have complicity statutes that would hold an accomplice liable for any crimes that are a reasonably foreseeable consequence of the crime which the accomplice intended to aid or encourage.  The Colorado General Assembly chose not to extend accomplice liability to reasonably foreseeable crimes, but rather limited such liability to those particular crimes which the accomplice intended to promote or facilitate.

*Id.* at 251 n.8 (citation omitted).

¶ 29    Under Colorado law,

> a person is legally accountable as a principal for the behavior of another constituting a criminal offense if he aids, abets, advises, or encourages the other person in planning or committing that offense, and he does so with: (1) the intent to aid, abet, advise, or encourage the other person in his criminal act or conduct, and (2) an awareness of circumstances attending the act or conduct he seeks to further, including a required mental

---

*Through the Lens of Complicity*, 28 Can. J.L. & Juris. 29, 39-41 (2015).

> state, if any, that are necessary for commission of the offense in question.

*People v. Childress*, 2015 CO 65M, ¶ 34.

¶ 30    Applied to the facts as presented at the providency hearing, the principles announced in *Bogdanov* and *Childress* may not support complicitor liability for the crime of first or second degree murder. While it may have been foreseeable that someone would be killed when the two men started out that night, defendant's liability does not, under *Bogdanov*, depend on the foreseeability of the result. Rather, it must be tied to his own intent and awareness of the circumstances under which his confederate acted. Defendant's position is, apparently, that he was not aware until it was too late that the shooter intended to kill someone other than a person whom defendant wanted to kill. These facts, if true, would not support a conviction of defendant for first or second degree murder under a complicitor theory. *See Childress*, ¶¶ 31-32 (discussing the mental states required of a principal and complicitor for "knowing" or "specific intent" crimes).

¶ 31    Because the facts, as presented at the providency hearing, would not support a conviction for first or second degree murder

based on transferred intent and complicity principles, any failure on the part of plea counsel to so advise defendant could have constituted deficient performance. *See Carmichael v. People*, 206 P.3d 800, 806 (Colo. 2009) ("[C]ounsel's failure to present defendant with the opportunity to make [a] reasonably informed decision [whether to accept a plea offer] will constitute deficient representation.").

¶ 32    Because the court summarily denied defendant's postconviction motion, the record does not disclose whether, in fact, plea counsel misadvised (or failed to properly advise) defendant; whether any failure on the part of counsel to properly advise defendant would have been unreasonable under the then-prevailing professional norms;[6] or, if so, whether defendant would likely have

---

[6] *See Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."); *Everett v. Sec'y, Fla. Dep't of Corr.*, 779 F.3d 1212, 1249 (11th Cir. 2015) ("The *Strickland* performance standard is objectively reasonable attorney conduct under prevailing professional norms. We look at what professional norms existed at the time that the attorney acted.") (citations omitted); *People v. Ray*, 2015 COA 92, ¶ 37 ("*Strickland*'s deficient performance prong is governed by the law as

pleaded guilty anyway.[7]  Consequently, a remand for an evidentiary

hearing on these matters is necessary.

> B.  *Failure To Advise Defendant of His Right To Appeal*

¶ 33  Defendant also contends that the district court erred in

denying his claim that plea counsel was ineffective in failing to

advise him about appealing the ruling on his Crim. P 32(d) motion

to withdraw guilty plea.  Again, we conclude that a remand is

necessary.

¶ 34  Twenty-five days after the court sentenced defendant,

defendant filed a pro se pleading, titled "Written Notice of Appeal /

Review of Sentence Will Be Sought," informing the court that he

wished to "appeal the court's decision [denying Rule 32(d) relief] and

. . . [his] sentence," and requesting that the court appoint him an

attorney.  No attorney was appointed; no appeal was taken.

---

it stood at the time of counsel's allegedly deficient performance
. . . .").

[7] In the guilty plea context, the question of ineffective assistance of counsel "prejudice" is analyzed in terms of whether there is a reasonable probability that, but for counsel's unprofessional errors, the defendant would not have pleaded guilty.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *People v. Garcia*, 815 P.2d 937, 943 (Colo. 1991).

¶ 35    Subsequently, in the supplemental Crim. P. 35(c) motion, postconviction counsel asserted that plea counsel was ineffective in "fail[ing] to advise [defendant] he had a right to appeal the denial of his 32(d) motion and his sentence."

¶ 36    The district court found that, even if it assumed plea counsel failed to advise defendant of his right to appeal, defendant was not entitled to relief because he had "identifie[d] no plausible appellate challenge to the denial of his request to withdraw his pleas," and therefore, he was not prejudiced.

¶ 37    Before turning to the merits of this issue, we must first address a point raised by the People — that is, that the record does not reflect that the district court ever ruled on the Crim. P. 32(d) motion, and thus there was nothing for defendant to appeal or be advised of appealing.

¶ 38    Ordinarily, we would, as urged by the People, not give any further consideration to this issue. *See Feldstein v. People*, 159 Colo. 107, 111, 410 P.2d 188, 191 (1966) ("[I]t is incumbent on the moving party to see to it that the court rules on the matter he urges. The trial court should be afforded the opportunity to so rule; otherwise, the matter will ordinarily not be considered on writ of

20

error."), *abrogated on other grounds by Deeds v. People*, 747 P.2d 1266 (Colo. 1987); *People v. Young*, 923 P.2d 145, 149 (Colo. App. 1995) ("[B]ecause he failed to request [from the trial court] a ruling on this issue, defendant has waived it on appeal.").

¶ 39     However, in this case, it was the district court that, only four days before sentencing, ordered plea counsel to file the Crim. P. 32(d) motion.  And, because the judge at sentencing was the same judge who had ordered that the motion be filed, the district court could reasonably have expected — and not been surprised by — the filing of the motion.

¶ 40     Further, the judge who ordered the motion to be filed and who sentenced defendant was the same judge who ruled on defendant's motions for postconviction relief.  In denying relief on this part of defendant's postconviction motions, that judge did not base his decision on any lack of a ruling on the Rule 32(d) motion.  If anything, he appeared to consider the Rule 32(d) motion to have been implicitly denied when he proceeded to sentencing.  We will consider it in this same fashion on appeal.

¶ 41     Turning to the merits of defendant's ineffective assistance of counsel claim, the United States Supreme Court has said that "a

lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000). In other cases, however,

> where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, . . . whether counsel has performed deficiently . . . is best answered by first asking . . . whether counsel in fact consulted with the defendant about an appeal. We employ the term 'consult' to convey a specific meaning — advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask . . . whether counsel's failure to consult with the defendant itself constitutes deficient performance.
>
> . . . .
>
> . . . [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel

that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. . . . Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 478-80 (citation omitted).

¶ 42 Here, either defendant or plea counsel filed several letters or motions seeking to withdraw the guilty plea on the basis of a purported misadvisement (and therefore misunderstanding) of the elements of the offense for which defendant entered his plea. And, twenty-five days after sentencing, defendant filed a pro se "notice of appeal" in the district court.

¶ 43 Given defendant's letters, plea counsel's motions, and defendant's pro se notice of appeal, the record contains ample reason to perceive that defendant would want to appeal the denial of his motion to withdraw his plea and that he had reasonably demonstrated that interest. The record reflects that plea counsel

was still representing defendant several months after sentencing. For purposes of this appeal, we, like the district court, will assume that plea counsel should have consulted with and advised defendant about his right to appeal,[8] but did not do so. *Cf. Flores-Ortega*, 528 U.S. at 481 ("We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal.").

¶ 44 We, however, disagree with the court's finding that defendant had not been prejudiced because he had "identifie[d] no plausible appellate challenge to the denial of his request to withdraw his pleas." In this context, ineffective assistance of counsel "prejudice" is demonstrated not by the existence of plausible appellate arguments, but rather by a showing that "there is a reasonable probability that, but for counsel's deficient failure to consult with

---

[8] "[A]dequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." *Thompson v. United States*, 504 F.3d 1203, 1206 (11th Cir. 2007). Counsel should also inform a defendant that he is obligated to file an appeal if that is what the defendant requests. *Id.* at 1207.

[the defendant] about an appeal, [the defendant] would have timely appealed." *Id.* at 484; *accord People v. Pendleton*, 2015 COA 154, ¶ 38.

¶ 45 Because the court summarily denied defendant's claim, the record does not reflect whether plea counsel had consulted defendant about appealing; what, if any, advice plea counsel might have given defendant about appealing;[9] what instructions defendant may have given counsel; and, whether there is a reasonable probability that defendant's failure to timely appeal the denial of his Rule 32(d) motion and sentence was attributable to counsel's advice or lack of advice. Consequently, the matter must be remanded for an evidentiary hearing on these issues.

## III. Conclusion

¶ 46 The order is reversed and the case is remanded for an evidentiary hearing on the two claims of ineffective assistance of counsel discussed in this opinion.

---

[9] For example, whether counsel informed defendant that, although she could file an appeal on his behalf, she herself could not pursue that appeal because of the nature of the underlying issue (i.e., her alleged ineffectiveness). Thus, the appeal, once perfected, would need to be pursued either by conflict-free counsel or by defendant himself.

¶ 47    If defendant demonstrates that his guilty plea is infirm as a result of plea counsel's ineffective assistance, the district court shall vacate the judgment of conviction and reinstate the original charges, without needing to address defendant's second claim.

¶ 48    If, however, defendant does not succeed in setting his conviction aside, the court shall consider defendant's second claim. If the district court determines, with respect to that claim, that defendant was deprived of his appellate rights as a result of ineffective assistance of plea counsel, the court shall appoint counsel for direct appeal and order counsel to file, in this court, a motion to allow a late-filed notice of appeal with, as proof of good cause for the late appeal, the district court's order finding ineffective assistance of plea counsel. *See People v. Long*, 126 P.3d 284, 287 (Colo. App. 2005).

¶ 49    The district court's rulings on remand are subject to appeal by either party.

¶ 50    JUDGE TAUBMAN and JUDGE STERNBERG concur.