[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16970

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 20, 2007
THOMAS K. KAHN
CLERK

D. C. Docket Nos. 05-61504-CV-WPD
04-60122 CR-WPD

RICHARD THOMPSON,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(March 20, 2007)**

Before TJOFLAT, BARKETT and KRAVITCH, Circuit Judges.

BARKETT, Circuit Judge:

Upon *sua sponte* reconsideration of this appeal, we vacate our prior opinion

and substitute the following opinion in its place.

Richard Thompson appeals the district court's denial of his Motion to Vacate brought pursuant to 28 U.S.C. § 2255. We reverse.

## I. Background

Thompson and two co-defendants, Wayne Annakie and Elworth Stone, pled guilty to one count of conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846, in connection with a drug-smuggling scheme involving crew members on Celebrity Cruise Lines.[1] All three defendants were sentenced on the same day. At the sentencing hearing, the district court granted the co-defendants' motions for a minor role reduction and sentenced them to 46 months imprisonment. Counsel for Thompson, who had not previously requested a reduction, then made an *ore tenus* motion for the same minor role reduction on Thompson's behalf, which the court denied. The court then sentenced Thompson to 57 months imprisonment. Thompson did not appeal.

Thompson, proceeding *pro se*, subsequently filed a timely Motion to Vacate pursuant to 28 U.S.C. § 2255, asserting four claims of ineffective assistance of

---

[1] Thompson and Stone were also charged with one count of possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. Pursuant to plea agreements, the government dismissed this count.

counsel.[2] The district court found three of the claims to be conclusively refuted by the record, but held an evidentiary hearing on the fourth: that Thompson's attorney, David Scott Markus ("Counsel"),[3] had failed to file an appeal as directed. After the evidentiary hearing, the court concluded that Thompson was not entitled to relief on the remaining claim, finding Counsel's testimony that Thompson did not ask for an appeal "more credible" (or, elsewhere, "slightly more credible") than Thompson's testimony to the contrary. The court denied the motion in its entirety, but granted Thompson a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c) on that claim.

## II. Discussion[4]

In order to prevail on his claim that counsel was constitutionally ineffective for failing to file an appeal, Thompson must show that counsel's performance was

---

[2] Thompson's ineffective assistance of counsel claims were that (1) counsel only met with him once prior to his entering the plea agreement; (2) counsel stipulated to a higher drug quantity than could properly have been attributed to Thompson; (3) counsel failed to file a motion for downward role adjustment prior to sentencing, thereby resulting in Thompson's higher sentence vis-à-vis his similarly situated co-defendants; and (4) counsel failed to file a notice of appeal despite Thompson's direction to do so immediately after sentencing.

[3] This opinion is not referring to attorney David Oscar Markus, who was not involved in the case.

[4] Whether counsel was ineffective is a mixed question of law and fact that we review de novo. United States v. Bender, 290 F.3d 1279, 1284 (11th Cir. 2002) (citation omitted). We review the district court's conclusions of law de novo, and its findings of fact for clear error. Nyland v. Moore, 216 F.3d 1264, 1266 (11th Cir. 2000).

deficient and that this deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000) (holding that Strickland test applies to claim that lawyer was ineffective for failing file a notice of appeal).

In Flores-Ortega, the Supreme Court "reaffirmed the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se." Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005) (citing Flores-Ortega, 528 U.S. at 477). Moreover, counsel generally has a duty to consult with the defendant about an appeal. See Flores-Ortega, 528 U.S. at 481 (expecting that courts "will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal."). The Supreme Court has defined the term "consult" specifically to mean "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes," id. at 478, to assure that any waiver of the right to appeal is knowing and voluntary.

In this case, after hearing the conflicting testimony of Thompson and his prior attorney, the district court credited Counsel's testimony that Thompson did not instruct him to file a notice of appeal. There is no basis for us to conclude that

the court's factual finding on this matter was clearly erroneous. See Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004).

However, where a defendant has not specifically instructed his attorney to file an appeal, we must still determine "whether counsel in fact consulted with the defendant about an appeal." Flores-Ortega, 528 U.S. at 478. As noted above, adequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal. Frazer v. South Carolina, 430 F.3d 696, 711 (4th Cir. 2005).

In this case, although Thompson and his attorney disagreed about the number of times they met throughout the course of the representation, it was undisputed that Counsel did not discuss Thompson's appellate rights prior to sentencing.[5] Indeed, he only advised Thompson of his appellate rights at sentencing *after* the judge notified Thompson of his right to appeal. Counsel testified that right after sentence was imposed, Thompson was "unhappy" with his sentence, as compared to that of his co-defendants, and "asked [him] about why

---

[5] Thompson testified that he met with his attorney only once between his initial appearance and plea. Counsel testified that he met with Thompson once or twice between the arraignment and plea, and once after receiving the pre-sentence investigation report.

5

the Judge told him he had a right to appeal if he had pled guilty." Counsel reiterated that Thompson had a right to appeal, only adding that he did not think an appeal would be successful or worthwhile. Thompson then said "fine." This exchange, which lasted no more than five minutes,[6] consisted simply of notifying Thompson of the right to appeal (as the judge had already done) and Counsel's opinion that such an appeal would not be successful. Counsel did not explain the appellate process or the advantages and disadvantages of taking an appeal. Counsel further admitted that he did not tell Thompson that an appeal would not expose Thompson to a higher sentence, nor that he was obligated to file an appeal if that is what Thompson wanted, regardless of his recommendation. When asked whether Thompson appeared to understand what an appeal was, Counsel responded "I don't know . . . I mean I can't get into his head." Counsel did not communicate further with Thompson during the ten-day period within which he could have appealed.

Although the district court found aspects of this testimony "troubling," its only comment about the adequacy of Counsel's performance was that "[c]onsulting with [Thompson] for less than five minutes about his right to appeal

_____

[6] Thompson testified that he and his attorney remained in the courtroom for about three minutes after sentence was imposed. Counsel testified that this exchange lasted "no more than five minutes, probably less."

does not equate to a failure to consult." The question of what constitutes adequate consultation, however, is not one of duration, but of content.[7]

The content of the exchange in this case did not constitute adequate consultation. Simply asserting the view that an appeal would not be successful does not constitute "consultation" in any meaningful sense. No information was provided to Thompson from which he could have intelligently and knowingly either asserted *or* waived his right to an appeal. This record is clear that no reasonable effort was made to discover Thompson's informed wishes regarding an appeal. Under these circumstances, any waiver by Thompson of his right to appeal was not knowing and voluntary.

Having determined that Counsel did not adequately consult with Thompson, we turn to whether, if counsel had an affirmative duty to consult, his failure to do so prejudiced the defendant. Flores-Ortega, 528 U.S. at 480, 484. Counsel has a constitutional duty to consult with a defendant about an appeal when: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing. Gomez-Diaz, 433 F.3d at 792 (citing

---

[7] While not dispositive, the short duration of the exchange is a relevant factor which, in this case, weighs against finding adequate consultation as a matter of law. See Flores-Ortega, 528 U.S. at 489 (Souter, J., concurring in part and dissenting in part) ("If the crime is minor, the issues simple, and the defendant sophisticated, a 5-minute conversation with his lawyer may well suffice; if the charge is serious, the potential claims subtle, and a defendant uneducated, hours of counseling may be in order.").

Flores-Ortega, 528 U.S. at 480).  In order to establish that he was prejudiced by counsel's failure to file an appeal, Thompson must show that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Flores-Ortega, 528 U.S. at 484.  Because a direct appeal of a federal conviction is a matter of right, see Rodriquez v. United States, 395 U.S. 327, 329-330 (1969), we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal.  Flores-Ortega, 528 U.S. at 485-86; Gomez-Diaz, 433 F.3d at 793.

Here, according to Counsel's own testimony, Thompson was "unhappy" with his sentence as compared to that of his co-defendants, and asked about the right to appeal at sentencing.  Under these circumstances, Counsel had a clear duty to consult with Thompson.[8]  Thompson demonstrated an interest in an appeal by asking his attorney about that right.  In addition, it cannot be said that no rational defendant would have wanted to appeal the differential sentence imposed under the facts of this case.

Finally, we readily find that Thompson met his burden of showing the

---

[8] That the sentencing judge notified Thompson that he had a right to appeal does not absolve counsel from the duty to consult with his client about the substance of the right to appeal.

requisite prejudice.  Thompson was dissatisfied with what he perceived to be a disparate sentence compared to his similarly-situated co-defendants.  Had Counsel adequately consulted with him about an appeal, there is a reasonable probability that Thompson would have exercised his right to appeal.  Indeed, there is no basis on this record to conclude otherwise.

REVERSED.