[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 8, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11558
Non-Argument Calendar
_____

D. C. Docket Nos. 06-14162-CV-KMM
01-14019-CR-KMM

RAMIRO RAMOS,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(December 8, 2008)**

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Ramiro Ramos, a federal prisoner proceeding pro se, appeals the district court's denial of his motion to vacate brought pursuant to 18 U.S.C. § 2255. After review, we vacate and remand.

## I. BACKGROUND

A superceding indictment charged Ramos with conspiracy (1) to hold migrant workers in involuntary servitude, (2) to engage in extortion to affect commerce, and (3) to harbor illegal aliens for commercial and personal gain, in violation of 18 U.S.C. § 371 (Count 1); extortion, in violation of 18 U.S.C. § 1951 (Count 2); use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(a) (Count 3); and harboring illegal aliens, in violation of 8 U.S.C. § 1324(a) (Count 4). Ramos pled not guilty and proceeded to trial. A jury found him guilty on all counts.

At sentencing, Ramos's presentence investigation report ("PSI") recommended, among other things, calculating an offense level of 28 using U.S.S.G. § 2H4.1(b)(4)(B).[1] The government objected that Ramos should receive leadership role and obstruction of justice enhancements. The district court

---

[1]Section § 2H4.1 calculates the offense level of a defendant convicted of an involuntary servitude offense. If the defendant also was convicted of any other felony offense, the offense level is "the greater of" either the base offense level plus 2 or the offense level for the other offense plus 2. U.S.S.G. § 2H4.1(b)(4)(A)-(B). The commentary states that, if there are multiple other felony offenses, the offense level for the "most serious offense" is used. The PSI used the offense level for Ramos's extortion offense (Count 2), which was 26 pursuant to § 2B3.2, plus 2 for a total offense level of 28.

overruled the government objections as untimely and adopted the PSI's

recommended sentencing range of 63 to 78 months' imprisonment for Counts 1, 2

and 4, followed by an 84-month consecutive sentence for Count 3. The district

court sentenced Ramos to a total of 147 months' imprisonments, 63 months on

Counts 1, 2 and 4 and 84 consecutive months on Count 3.

Ramos appealed and, based on Scheidler v. National Organization for

Women, Inc., 537 U.S. 393, 123 S. Ct. 1057 (2003), this Court vacated Ramos's

convictions and sentences on Counts 2 and 3 in their entirety and on Count 1 to the

extent it relied on the extortion alleged in Count 2. The Court remanded for

resentencing on Counts 1 and 4. United States v. Ramos, No. 02-16478, slip op. at

14 (11th Cir. Sept. 26, 2003).

On remand, a new PSI recommended an offense level of 33 under §

2H4.1(b)(4)(B) for the harboring illegal aliens offense (Count 4), which was level

31, pursuant to § 2L1.1, plus 2 for a total offense level of 33.[2] The PSI added an

obstruction of justice enhancement (2 levels), and the government timely objected

that Ramos should receive a leadership role enhancement (4 levels). This time the

district court included both enhancements and calculated an offense level of 39,

resulting in a guidelines range of 262 to 327 months' imprisonment. The district

---

[2]See supra note 1.

court sentenced Ramos to a total of 180 months' imprisonment, 60 months for Count 1 and 120 months for Count 4, which was 33 months higher than the sentence Ramos received at his original sentencing.

Ramos filed a second appeal, challenging the calculation of his offense level under § 2H4.1(b)(4) and arguing that his new sentences were vindictive. This Court affirmed Ramos's sentences. United States v. Ramos, 130 F. App'x 415 (11th Cir. 2005).

Ramos's § 2255 motion alleged, inter alia, that his counsel in his first direct appeal gave ineffective assistance of counsel. Specifically, Ramos argued that his appellate counsel failed to consult with him about the risks of filing the direct appeal. The magistrate judge's report ("R&R") recommended the district court deny Ramos's ineffective assistance of appellate counsel claim. The R&R concluded that Ramos "received vigorous and able representation on direct appeal . . . ." Over Ramos's objection, the district court adopted the R&R and, without holding an evidentiary hearing, denied Ramos's § 2255 motion.

The district court denied Ramos's motion for reconsideration and motion for a certificate of appealability ("COA"). This Court granted Ramos a COA on this issue only:

> [w]hether the district court erred in finding that counsel was not ineffective for pursuing appellant's first direct appeal after failing to

4

recognize a calculation error in the original presentence investigation report that, when corrected at re-sentencing, resulted in a higher sentence for the appellant.

## II. DISCUSSION

To prevail on a claim of ineffective assistance of counsel, an individual must show that (1) "counsel's performance was deficient" in that it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064 (1984). The Supreme Court has held that counsel has a constitutional duty "to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 480, 120 S. Ct. 1029, 1036 (2000). To "consult," means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. at 478, 120 S. Ct. at 1035; see also Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007); Gomez-Diaz v. United States, 433 F.3d 788, 792 (11th Cir. 2005).[3]

---

[3]In reviewing a district court's denial of a § 2255 motion, we review findings of fact for clear error and questions of law de novo. Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004). Whether a defendant ultimately has received ineffective assistance of counsel is a mixed question of fact and law reviewed de novo. Mincey v. Head, 206 F.3d 1106, 1142 (11th Cir.

5

By retaining appellate counsel, Ramos indicated an interest in appealing and, under Flores-Ortega, triggered appellate counsel's duty to consult with Ramos. Ramos claims that his appellate counsel did not advise him of any disadvantages of pursuing an appeal before filing his direct appeal. Specifically, Ramos claims his appellate counsel did not investigate the circumstances of his first sentencing and did not discover (1) the miscalculations of the offense level under § 2H4.1(b)(4)(B) and (2) the government's overruled (but otherwise arguably meritorious) objections to the PSI's failure to impose obstruction of justice and leadership role enhancements. In addition, Ramos alleged his counsel did not explain to Ramos that he likely faced a stiffer sentence if some but not all of his convictions were vacated and the case was remanded for resentencing. In other words, Ramos contends his appellate counsel did not advise him of any risks he faced if his direct appeal was only partially successful.

The district court must hold an evidentiary hearing on a motion to vacate "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; see also Downs-Morgan v. United States, 765 F.2d 1534, 1536-37 (11th Cir. 1985). Given Ramos's detailed allegations, the district court erred in declining to hold an evidentiary hearing to

2002).

6

establish the contents of appellate counsel's consultation with Ramos about pursing a direct appeal.  See Thompson, 433 F.3d at 792.  On remand, the district court shall determine: (1) whether Ramos's counsel in his first direct appeal fulfilled his duty to consult with Ramos and to make reasonable efforts to determine Ramos's informed wishes regarding an appeal; and (2) if not, whether Ramos suffered any prejudice as a result.  On remand, the parties shall also address whether the first sentence was merely the result of a guideline miscalculation (in Ramos's favor) and whether Ramos had any legal entitlement to that lower offense level and ultimately lower sentence.  Accordingly, the judgment denying Ramos's § 2255 motion is vacated and the action is remanded to the district court for further proceedings consistent with this opinion.

**VACATED and REMANDED.**