[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12251
Non-Argument Calendar
_____

D.C. Docket Nos. 1:17-cv-21866-UU; 1:15-cr-20723-UU-1


JUNIEL B. RIOS,

                                                    Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

                                                    Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 5, 2019)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Juniel B. Rios appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence.  This Court granted the following certificate of appealability:  Whether the district court erred in concluding that Rios's counsel was not ineffective for failing to file a notice of appeal, or for failing to consult with Rios about filing an appeal?  After careful review, we agree that counsel was not ineffective for failing to file a notice of appeal, but we conclude, contrary to the district court, that counsel breached a duty to consult with Rios regarding an appeal. So we vacate the judgment and remand for further proceedings.

## I.

Based on a written plea agreement, Rios pled guilty to one count each of possession with intent to distribute ethylone, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A).  Included in Rios's plea agreement was an appeal waiver providing that he "waives all rights . . . to appeal any sentence imposed . . . unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or upward variance from the advisory guideline range that the Court establishes at sentencing."

Rios's presentence investigation report ("PSR") recommended a guideline imprisonment range of 262 to 327 months.  That range resulted from the application of subsection (c)(2) of the career-offender guideline, U.S.S.G. § 4B1.1, which

specifies that, in cases where a "career offender" is convicted of § 924(c) and another offense, the guideline range is determined, absent circumstances not present here, by the "Career Offender Table" in § 4B1.1(c)(3). The PSR recommended that Rios was a career offender based on two prior convictions for Florida burglary of an unoccupied dwelling, so it applied the appropriate range from the table.

Rios did not object to his classification as a career offender. Instead, Rios contended that the court should sentence him below the guideline range either by applying a downward-departure provision, U.S.S.G. § 4A1.3, or by downwardly varying from the guideline range under 18 U.S.C. § 3553(a).

At Rios's June 2016 sentencing, the district court decided that it was "not going to sentence [Rios] as a career offender," and it asked the probation officer for the non-career-offender guideline range. The court explained that much of Rios's criminal history was for non-violent and "petty offenses." At the same time, the court was "very disturbed" by the circumstances of his conduct in this case—Rios's residence contained two ballistic vests, one AR-15 semi-automatic rifle, a Taser device, and police red-and-blue emergency lights. Balancing these factors, the court decided to sentence Rios to 120 months on the drug offense, followed by 60 months on the firearm offense, for a total term of 180 months of imprisonment. Neither party objected to or sought clarification of the sentence. The court informed Rios that he had 14 days in which to appeal his sentence.

The record is ambiguous as to the district court's guideline calculations. Two possibilities emerge. It could be said, first, that the court implicitly adopted the PSR's uncontested guideline calculations, including the career-offender guideline range, and then varied *downward* from that range based on the § 3553(a) factors. Alternatively, the court may have decided that Rios was not a career offender under the guidelines, calculated the guideline range without the enhancement (70 to 87 months, plus 60 months consecutive), and then varied *upward* from that range based on the § 3553(a) factors. This latter theory is reflected in the court's "Statement of Reasons" for the sentence. As explained in more detail below, this ambiguity is relevant to Rios's current motion to vacate under § 2255.

## II.

Rios timely filed a *pro se* § 2255 motion in May 2017. In it, he alleged several claims, including that sentencing counsel was ineffective for not appealing upon Rios's request to do so. Rios explained in an accompanying memorandum that, on the day of sentencing, he requested that counsel file an appeal because he felt the sentence was too long. Based on counsel's pre-plea advice, Rios expected to receive a total sentence of between five and seven years.

A magistrate judge appointed counsel and held an evidentiary hearing. In support of his claims, Rios called four witnesses: (a) Rios himself; (b) Giselle Rios ("Ms. Rios"), his mother; (c) James Denis, his brother-in-law; and (d) Maria Guerra,

4

the mother of his daughter.  In response, the government called Rios's prior attorneys, Jorge Del Villar and Nayaib Hassan.

## A.

Rios testified as follows.  After sentencing, Del Villar never spoke with him about appealing the sentence, despite Rios's best efforts to get in touch.  Del Villar left the courtroom immediately after sentencing, and he refused to answer multiple phone calls from Rios in the days that followed.  One time, Rios was able to get ahold of Del Villar by calling from a "counselor's" telephone, rather than the regular prison phone, but Del Villar responded that he could not talk once he realized it was Rios calling.  Rios also asked his mother to contact Del Villar on his behalf, but despite these efforts, Del Villar never visited with or spoke to Rios after sentencing.

Rios admitted that he never directly asked Del Villar to file an appeal, but he explained that it was expected because, when he signed the plea agreement, Del Villar assured him that if the sentence exceeded seven years, "we would appeal and we would win the appeal."  Rios also stated that he told his other attorney, Hassan, immediately after sentencing that he wanted to appeal.

Ms. Rios testified that she communicated with Del Villar in person, by phone, and through text messages.  Immediately after sentencing, she and other family members met with Del Villar in a courthouse hallway. Denis and Guerra also offered testimony about this meeting.  The family was distressed about the length of the

5

sentence, and Ms. Rios and Denis asked if the sentence could be appealed.  Ms. Rios recalled that Del Villar stated he would talk to Rios.  Denis recalled Del Villar saying that an appeal would be a waste of time and that there were other avenues to obtain a sentence reduction.  In the days that followed, according to Ms. Rios, she spoke with Del Villar by phone and told him that Rios wanted to appeal, and she also sent Del Villar multiple text messages asking him to visit Rios in custody.

The record contains a translated copy of the text messages sent between Del Villar and Ms. Rios from June 2016 to October 2016.  In relevant part, on June 22, nine days after sentencing, Ms. Rios wrote to Del Villar that Rios "was waiting for you" and had said to "please make sure to show up."  Del Villar responded that he hoped to be there at 5:30, but he later told Ms. Rios that he "was not able to enter" because "[t]hey were way behind with the attorneys."  At around 10:30 a.m. the following day, Ms. Rios asked Del Villar when he could visit Rios and stated that "he needs to see you."  It appears that Del Villar did not respond, so Ms. Rios sent a follow-up text just after 4:00 p.m., stating "??? [Rios] has sent me more than one thousand messages that he needs to see you."  Del Villar still had not responded by July 1, when Ms. Rios implored Del Villar to "PLEASE ANSWER ME," or by July 6, when Ms. Rios stated that Rios was "waiting every day for you to go see him because he needs to talk to you."  Ms. Rios did not expressly ask if there was a way to reduce Rios's sentence until July 22, and she did not mention the word "appeal"

6

in any of the texts. Later on, her texts referred to efforts to obtain a sentence reduction through cooperation and to have Rios's phone returned to the family.

For his part, Del Villar confirmed Rios's testimony that, after sentencing, he did not discuss with Rios the possibility of appealing the sentence or ask if Rios wanted to appeal. But Del Villar explained that, when he discussed the appeal waiver with Rios while going over the plea agreement, Rios was willing to waive his right to appeal because he thought he could get a sentence reduction through cooperation. Rios had met with the government twice before sentencing to cooperate and provide information. Aside from the appeal waiver, Del Villar had no other discussions with Rios about appealing.

Del Villar also confirmed that he spoke with Rios's family members in the courthouse hallway after sentencing. While he acknowledged that the family was distressed about the length of the sentence, he testified, contrary to Ms. Rios and Denis, that "an appeal was never discussed." Similarly, while he admitted having multiple communications with Ms. Rios after sentencing, he claimed that the topic of Rios's desire to appeal the sentence "was never brought up" and that, in his view, Ms. Rios was motivated by other concerns.

Del Villar further testified that he believed Rios did not have a valid issue for appeal because, although the judge had not sentenced Rios as a career offender, the judge never indicated that Rios was not a career offender, and it appeared that the

7

judge simply varied below the career-offender guideline range.  So it appeared to Del Villar that the appeal waiver would bar an appeal.

Finally, Hassan, who was hired to assist with sentencing and efforts to obtain a reduced sentence through cooperation, testified that he did not recall Rios state after sentencing that he wanted to appeal the sentence.

**B.**

After the hearing, the magistrate judge issued a report and recommendation ("R&R"), recommending that Rios's § 2255 motion be denied.  The magistrate judge analyzed two issues:  (1) whether Rios asked Del Villar to file an appeal; (2) if not, whether Del Villar had a duty to consult with Rios about a possible appeal.

As to the first issue, according to the R&R, there was no express request by Rios or his family members that Del Villar file a direct appeal.  On this point, the magistrate judge credited the testimony of Del Villar and Hassan over the testimony of Rios and his family members.  The court noted that Rios did not testify that he expressly asked Del Villar to file an appeal and that Ms. Rios's testimony was undermined by the fact that her text messages she did not mention an appeal.

As to the second issue, the R&R recommended that Del Villar did not have a duty to consult with Rios about filing an appeal.  First, the R&R stated, Rios received the sentence for which he bargained because he was sentenced substantially below the statutory maximum of 25 years of imprisonment and he received "a substantial

reduction from the guidelines range of 262 to 327 months."  Second, according to the R&R, Rios did not have a non-frivolous ground for appeal in light of the valid sentence-appeal waiver, which appeared to bar any appeal.  In this regard, the R&R adopted the view that the sentencing court had varied downward from the career-offender guideline range, not upward from the non-career-offender range.  Finally, the R&R noted that Rios had sought to reduce his sentence through cooperation, and that the government would be unlikely to consider cooperation if he had appealed his sentence after an appeal waiver was negotiated.  These factors together, according to the R&R, showed that Del Villar "was under no duty to further consult with the movant about an appeal after sentencing."

Over Rios's objections, the district court adopted the R&R, denied Rios's § 2255 motion, and denied a COA.  Rios appealed to this Court, and we granted the COA set out at the beginning of this opinion.

## III.

Whether counsel was ineffective is a mixed question of law and fact. *Thompson v. United States*, 504 F.3d 1203, 1206 n.4 (11th Cir. 2007).  We review the district court's findings of fact for clear error and its legal conclusions *de novo*. *Id.* We afford substantial deference to the district court's credibility determinations with respect to witness testimony.  *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015).  In general, where witnesses present conflicting testimony, a "trial

9

judge's choice of whom to believe is conclusive on the appellate court unless the judge credits exceedingly improbable testimony." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (ellipsis and quotation marks omitted).

"In order to prevail on his claim that counsel was constitutionally ineffective for failing to file an appeal, [Rios] must show that counsel's performance was deficient and that this deficiency prejudiced him." *Thompson*, 504 F.3d at 1206; *Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000) (holding that the test from *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that a lawyer was ineffective for failing to file an appeal).

A § 2255 movant can meet this test in two ways. First, he can show that counsel disregarded a specific instruction to file a notice of appeal. *Flores-Ortega*, 528 U.S. at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). Counsel's performance in these circumstances is *per se* deficient because "the decision to appeal rests with the defendant." *Id.* at 479. Moreover, prejudice is presumed when counsel's deficient performance deprives a defendant of an appeal that he otherwise would have taken. *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019).

Second, a § 2255 movant can show that counsel failed to adequately consult with him about an appeal and that, had he received reasonable advice from counsel

10

about the appeal, he would have instructed his counsel to file an appeal. *Flores-Ortega*, 528 U.S. at 478, 484, 486; *see Thompson*, 504 F.3d at 1206 ("[A]dequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal."). To prove deficient performance under this route, the movant must show that counsel had a "constitutionally imposed duty to consult." *Flores-Ortega*, 528 U.S. at 480. Counsel has a duty to consult when (1) a rational defendant would want to appeal; or (2) the particular defendant reasonably demonstrated an interest in appealing. *Thompson*, 504 F.3d at 1207. In making this determination, courts must take into account all the information counsel knew or should have known.[1] *Flores-Ortega*, 528 U.S. at 480. While there is no "bright-line rule" that counsel must always consult with a defendant regarding an appeal, the Supreme Court has recognized that counsel will have a duty to consult "in the vast majority of cases." *Id.* at 480–81.

---

[1] Factors relevant to these inquiries include whether the conviction followed a guilty plea, whether the defendant received the sentence he bargained for, whether the plea agreement expressly waived some or all appeal rights, and whether there were any potential non-frivolous grounds for appeal. *Otero v. United States*, 499 F.3d 1267, 1270–71 (11th Cir. 2007).

11

**IV.**

The district court, based on the magistrate judge's findings and credibility determinations, concluded that Rios's prior attorney, Del Villar, did not perform deficiently for two reasons:  (1) Del Villar did not disregard a specific request to file an appeal; and (2) Del Villar had no post-sentencing duty to consult with Rios about an appeal.

The district court's finding that Rios, either personally or through his family members, did not instruct Del Villar to file a notice of appeal is not clearly erroneous. On this matter, the magistrate judge heard conflicting testimony from, on the one hand, Rios's prior attorneys, Del Villar and Hassan, who testified that neither Rios nor his family members expressly requested that an appeal be filed on Rios's behalf, and, on the other hand, Rios and his family members, who testified that multiple such requests were made both before and after sentencing. The magistrate judge's "choice of whom to believe is conclusive" on us unless the judge credited "exceedingly improbable testimony." *Ramirez-Chilel*, 289 F.3d at 749. And we cannot say that Del Villar's testimony was "so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Rivers*, 777 F.3d at 1317.

We disagree, however, with the district court's conclusion that counsel did not have a duty to consult with Rios regarding an appeal after sentencing. As we have noted, counsel has a duty to consult with his client when (1) a rational defendant

12

would want to appeal or (2) the particular defendant reasonably demonstrated an interest in appealing. *See Thompson*, 504 F.3d at 1207.

Whether a rational defendant would want to appeal is not a straightforward inquiry in this case. The district court concluded that the appeal waiver would have barred any appeal, but the record is ambiguous on this point. One of the two sentencing possibilities outlined above would not have triggered the appeal waiver. While the government suggests that an appeal, even if not barred, would have been dangerous because the government could have prevailed on the career-offender issue on cross-appeal of the sentence, it cites no case where we have reversed a similar sentencing decision where the government failed to object below. The government also suggests that by taking an appeal Rios would have been abandoning any hope of a sentence reduction through cooperation. But the record is unclear whether there was any real possibility of a reduction after sentencing. And a defendant's motivations can change in light of new circumstances. Ultimately, however, we need not decide whether a rational defendant would want an appeal.

Based on "all the information counsel knew or should have known," "there is reason to think that . . . [Rios] reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. While Del Villar testified that Rios had pled guilty and executed an appeal waiver in the hopes of obtaining a sentence reduction through cooperation, the record also shows that, despite two

13

meetings with the government, his cooperation had not produced any results by the time of sentencing. And there is little else in the record to show that a post-sentencing reduction was a real possibility.

In addition, Del Villar knew that the length of the sentence was unexpected and distressing to Rios's family, who appear to have kept in close contact with Rios. And he knew from Rios's phone calls and Ms. Rios's text messages that Rios was anxious to speak with him within the 14-day appeal period. Ms. Rios's texts make clear the urgency of Rios's desire to speak with Del Villar. For instance, ten days after sentencing, Ms. Rios wrote to Del Villar that Rios had "sent me more than one thousand messages that he needs to see you." While likely an exaggeration, and even though Ms. Rios never mentioned the word "appeal," the text message conveys Rios's desperation about the sentence and his desire to speak with Del Villar about his options going forward, which necessarily includes the possibility of an appeal. Yet Del Villar ignored these entreaties and never spoke with Rios after sentencing.

Given these circumstances, which include Rios's repeated and urgent requests to speak with counsel, both personally and through his mother, within the 14-day appeal period, we conclude that this case falls within the "vast majority of cases" in which counsel has a duty to consult with the defendant about an appeal. *Flores-Ortega*, 528 U.S. at 481. While Del Villar may have believed that an appeal would

14

be a waste of time, he still had a duty to consult with his obviously distressed client about an appeal because "the decision to appeal rests with the defendant." *Id.* at 479.

## V.

Although we conclude that counsel failed to consult with Rios about an appeal, Rios still must establish prejudice. *See Thompson*, 504 F.3d at 1208. "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Flores-Ortega*, 528 U.S. at 484. In this inquiry, the same evidence courts consider in evaluating performance "will often be highly relevant." *Id.* at 485. "But, while the performance and prejudice prongs may overlap, they are not in all cases coextensive." *Id.* at 486. In particular, evidence that a defendant demonstrated an interest in appealing "alone is insufficient to establish that, had the defendant received reasonable advice from counsel about the appeal, he would have instructed his counsel to file an appeal." *Id.*

The district court did not address whether Rios, had he received reasonable advice from counsel about the appeal, would have instructed Del Villar to file an appeal. Accordingly, we vacate the judgment and remand this case for the district court to consider whether Rios was prejudiced by counsel's failure to consult with him about an appeal.

**VACATED AND REMANDED.**

15