[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10908

Non-Argument Calendar

_____

MIGUEL MESA,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-21836-MGC

_____

Before ROSENBAUM, BRASHER, and HULL, Circuit Judges.

PER CURIAM:

After a guilty plea, Miguel Mesa is serving a 100-month sentence for conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349. Mesa appeals the district court's denial of his 28 U.S.C. § 2255 motion to vacate his sentence based on ineffective assistance of counsel.

At sentencing, the district court granted the government's U.S.S.G. § 5K1.1 motion for a downward departure based on Mesa's substantial assistance to the government. Mesa contends that the government would have filed a stronger § 5K1.1 motion but for his defense counsel's incorrect advice, which led Mesa to take a sales job that the government alleged violated his pretrial release bond conditions and caused the government to stop Mesa's cooperation.

As explained below, the district court was fully aware of defense counsel's faulty advice to Mesa; the district court did not revoke Mesa's bond; the government had additional reasons for stopping Mesa's cooperation; the district court's ultimate departure was more than the government requested; and, in sentencing Mesa, the district court emphasized the impact of his crimes on the victims. After careful review, we conclude that, even assuming defense counsel was ineffective, Mesa has failed to carry his burden to establish prejudice at his sentencing.

## I.    CRIMINAL PROCEEDINGS

### A.  Offense Conduct

In September 2009, Craig Sizer hired Mesa to sell shares of stock in Sanomedics International Holdings, Inc. ("Sanomedics"), which claimed to develop and market a line of non-contact infrared thermometers.  Mesa hired sales agents to solicit investors via telemarketing.  Mesa also hired Anita Sgarro, who operated a similar telemarketing group to sell the stock.

In 2014, Mesa and his co-conspirators began to sell stock in another corporation, Fun Cool Free, which claimed to hold a smartphone gaming portfolio with more than 500 gaming applications.  Mesa and his co-conspirators knowingly made false statements to potential investors to sell stock in Sanomedics and Fun Cool Free.

From September 2009 to December 2015, the scheme raised approximately $23 million from the sale of stock to more than 700 individuals.  Sizer paid Mesa a commission of 50% of all money raised by Mesa and his salespeople.  Mesa used this money to pay himself and his salespeople a commission on sales of stock.

### B.  Initial Proceedings

On September 22, 2016, an indictment charged Mesa with two counts of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349 (Counts 1 and 11); ten counts of mail fraud, in violation of 18 U.S.C. § 1341 (Counts 2-9, 12-13); and one count of wire fraud, in violation of 18 U.S.C. § 1343 (Count 10).

The indictment also charged twelve other individuals, including Sizer and Sgarro, for their involvement in the Sanomedics and Fun Cool Free schemes.[1] On September 27, 2016, a magistrate judge granted Mesa pretrial release subject to certain bond conditions, including that Mesa have "no employment [in] telemarketing or/and securities."

After the bond hearing, Mesa asked his attorney if it would violate the telemarketing condition for him to continue working at Vacaciones Holiday, LLC ("Vacaciones"), a travel agency his wife had founded.   Vacaciones advertised vacation packages and provided a toll-free number for consumers to call to purchase the vacations.  Defense counsel told Mesa that working at Vacaciones would not violate the bond condition.  Defense counsel did not consider Vacaciones's business model to be "telemarketing" because it did not involve cold-calling clients, using lead lists, or proposing any type of financial services.  Based on defense counsel's advice, Mesa continued to work at Vacaciones.

## C.  Guilty Plea

Pursuant to a January 2017 plea agreement, Mesa pled guilty to Count 1, conspiracy to commit mail and wire fraud, and stipulated to a restitution amount of $22,456,186.  In a factual

---

[1] Sizer, like Mesa, pled guilty before trial.  Sgarro did not plead guilty and was tried with four other co-conspirators.  After an eight-week trial, a jury found Sgarro guilty on all counts.  This Court affirmed Sgarro's convictions.  *See United States v. Wheeler*, 16 F.4th 805, 811, 812 n.1 (11th Cir. 2021).

proffer, Mesa agreed that the government would be able to prove his offense conduct recounted above at a trial.

Mesa also agreed to cooperate fully with the government, which reserved the right to move for a downward departure. Mesa confirmed that he understood

> that nothing in this agreement requires [the government] to file any such motions, and that [the government's] assessment of the quality and significance of the defendant's cooperation shall be binding as it relates to the appropriateness of [the government's] filing or non-filing of a motion to reduce sentence.

Mesa also agreed that the district court was "under no obligation of any type to grant a motion for reduction of sentence."

The district court set Mesa's sentencing hearing for June 2017. At his interview on February 22, 2017, Mesa told the probation officer about his employment at Vacaciones.

### D. May 25 Hearing on Vacaciones Dispute

On February 27, 2017, Mesa moved for leave to travel internationally because his stepdaughter was seriously ill. The government did not oppose his motion, which the district court granted. The trip was delayed, however, and Mesa filed a second motion to travel in May 2017. This time, the government opposed Mesa's motion to travel, explaining that, now, it had obtained information that Mesa was violating his bond by working at Vacaciones.

On May 25, 2017, the district court held a hearing on Mesa's motion to travel and addressed the government's allegation that Mesa's Vacaciones employment violated a bond condition. The district court expressed concern that Mesa was in another "selling job." Defense counsel stressed (1) Mesa's job at Vacaciones was not telemarketing because its salespeople did not make cold calls or use lead lists; (2) Vacaciones was a legitimate company; and (3) although Mesa paid his salespeople through commissions, legitimate sales businesses used that compensation structure.

The government called FBI Special Agent Jonathan Schwerer, who testified that he and other agents visited Vacaciones and interviewed Mesa and three employees. At that time, Mesa was still cooperating with the government. Agent Schwerer acknowledged that (1) Mesa provided him information about a business run by a criminal organization in Hollywood, Florida; (2) an investigation was later opened based on Mesa's cooperation; (3) another investigation was opened in Los Angeles based on Mesa's information; and (4) Mesa was doing the best he could to cooperate and was providing truthful, accurate information. Agent Schwerer admitted that he had not interviewed any individuals who purchased vacation packages from Vacaciones.

Ultimately, the district court declined to revoke Mesa's bond. The court gave Mesa "the benefit of the doubt" about Vacaciones. The court did indicate that Mesa needed to find a new job that was not in direct sales. The district court denied Mesa's

request for international travel.  Mesa then stopped working at Vacaciones.

### E.  Mesa's Sentencing Memo Dated June 20, 2017

In his sentencing memorandum, Mesa contended that the government's "belief that a bond condition has been violated has led to the termination by the Government of [Mesa's] cooperation and its current antagonistic position as to crediting [Mesa] for his cooperation."

With his sentencing memorandum, Mesa attached two e-mails between his counsel and the same prosecutor, in which the prosecutor stated that (1) the government had stopped using Mesa as a cooperator because of Mesa's "current room activities, violation of bond, and lack of candor with me and agents in [earlier proffer] meetings"; and (2) Mesa's information about Sizer and Sgarro was substantial, while the rest of Mesa's information about the instant case was "extra but alone would not rise to the level of substantial assistance."  In one of the e-mail conversations, defense counsel listed twelve items that Mesa had provided information about, including two that had open investigations.

### F.  Sentencing

On July 10, 2017, prior to sentencing, the government filed a U.S.S.G. § 5K1.1 motion for a downward departure based on Mesa's cooperation.  It stated that Mesa's cooperation was a factor in Sizer's guilty plea.  It requested that the court reduce Mesa's sentence by twenty percent from the advisory guidelines range.

At sentencing on July 12, 2017, the district court found that Mesa's offense level was 33 and his criminal history category was I, resulting in an advisory guidelines range of 135 to 168 months' imprisonment. The government then recommended a sentence of 108 months' imprisonment, which was 27 months, or twenty percent, below the low end of the guidelines range.

Mesa argued that a twenty percent reduction did not represent the quality and persistence of his cooperation. As to the instant case, Mesa explained that he met with agents fifteen to twenty times, gave them the names of salespeople, identified documents found in his "boiler room," and helped them identify and locate Anita Sgarro. Mesa argued that he actively cooperated on numerous new cases until May 2017, when the government cut off cooperation based on its belief that Mesa was violating his bond condition.

The district court then asked: "If I use the information that you're giving me, the level of cooperation, the ability to continue to possibly work, what would you say would be an appropriate sentence?" In response, Mesa's counsel asked for a one-third reduction for Mesa's cooperation, to 90 months, or 45 months below the low end of the guidelines range.

Later on, Mesa's counsel argued for a downward variance to three to four years' imprisonment. Defense counsel emphasized that: (1) Vacaciones was a legitimate travel business; (2) if there was a bond violation, the fault was "not my client's; the fault is mine"; (3) the way defense counsel read the bond restriction was that Mesa

could not be involved in any enterprise that would raise money; (4) defense counsel did not read the bond condition as prohibiting Mesa from selling travel packages or having salesmen on telephones; and (5) again, "So that fault is mine."

In response, the government stated first that Mesa had met with the government for seven to ten proffer meetings, not fifteen to twenty. Next, it noted that (1) Mesa had not been "completely forthcoming" in at least one of the early proffer meetings, as he told the agents that his salespeople did not use sales scripts and then changed his story after being confronted with a sales script seized from his boiler room, and (2) even though defense counsel said it was his fault, Mesa's post-bond conduct—operation of a boiler room selling a different product—"adversely affected the level of cooperation credit that we think he should get."

Next, the government explained that: (1) Mesa assisted it in identifying Sizer, who was above him in the conspiracy; (2) it probably would have called Mesa to testify if Sizer had not pled guilty; (3) Mesa gave it information on Sgarro that was only somewhat useful because he provided her pseudonym; (4) it would not have called Mesa to testify in the trial of the salesmen below him; and (5) Mesa should not get credit for any charged defendants other than Sizer and Sgarro.

In reply, Mesa argued that the court also had heard Agent Schwerer's testimony about his cooperation relating to matters outside of the instant case, including the ongoing investigation in Los Angeles that was opened based on Mesa's information.

After Mesa's allocution, the district court granted the government's § 5K1.1 motion based on Mesa's cooperation. The district court then discussed the impact the fraud scheme had on individual victims, noting that Mesa's cooperation and payment of restitution could not "unring that bell." It sentenced Mesa to 100 months' imprisonment.

Mesa did not file a direct appeal.

## II.    § 2255 PROCEEDINGS

Mesa, represented by new counsel, timely filed a 28 U.S.C. § 2255 motion to vacate his sentence. As relevant here, Mesa argued that: (1) defense counsel was ineffective for advising Mesa that he could continue to work at Vacaciones without violating his bond condition; and (2) this error prejudiced him because the government ultimately suspended his cooperation efforts after the Vacaciones issue was raised. Mesa asserted that there was a reasonable probability that, but for counsel's error, the government would have permitted him to cooperate longer and would have filed a stronger U.S.S.G. § 5K1.1 motion for a downward departure.

A magistrate judge issued a report and recommendation ("R&R") recommending denial of Mesa's § 2255 motion. The magistrate judge found that defense counsel's incorrect advice was deficient performance, but that Mesa had not shown prejudice.

Overruling Mesa's objections, the district court adopted the R&R and denied Mesa's § 2255 motion.[2]  The court concluded that although defense counsel provided ineffective assistance, Mesa did not establish prejudice.  The district court granted this COA:

> The Court also finds that reasonable jurists could disagree with the Court's disposition of the issues concerning the potential consequences of Defendant's continued employment at the travel agency due to his lawyer's incorrect advice. Accordingly, this Court GRANTS a Certificate of Appealability.[3]

---

[2] The district court judge who ruled on Mesa's § 2255 motion was the same district court judge who imposed his sentence.

[3] In his opening brief, Mesa raises issues outside the scope of the COA.  Mesa, who was represented by counsel throughout these § 2255 proceedings, did not move this Court to expand the COA.  Therefore, we do not address these issues.  *See Dell v. United States*, 710 F.3d 1267, 1272 (11th Cir. 2013) (explaining that "an appellant granted a COA on one issue cannot simply brief other issues as he desires in an attempt to force both the Court and his opponent to address them").  We also decline Mesa's suggestion, raised in his reply brief, to treat his opening brief as a motion to expand the COA.  *See Tompkins v. Moore*, 193 F.3d 1327, 1332 (11th Cir. 1999) ("An application to expand the [COA] must be filed promptly, well before the opening brief is due. Arguments in a brief addressing issues not covered in the certificate . . . will not be considered as a timely application for expansion of the certificate; those issues simply will not be reviewed.").

### III.    DISCUSSION

To prevail on a Sixth Amendment claim of ineffective assistance of counsel, a movant must demonstrate that: (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness; and (2) he suffered prejudice because of that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064 (1984).[4]    On appeal, the parties do not dispute that Mesa's attorney's advice constituted deficient performance.

To show prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068.   "A reasonable probability is one sufficient to undermine confidence in the outcome." *Id.*   It is not enough for the movant to show that the error had some conceivable effect on the outcome of the proceeding, but rather, he must show that the result would have been different.  *Id.* at 693, 104 S. Ct. at 2067-68.

Mesa's alleged prejudice is that his attorney's deficient advice deprived him of the opportunity to earn a stronger § 5K1.1 motion from the government and in turn a lower sentence from the district court.  Mesa's arguments ignore, however, that before issuing Mesa's sentence, the district court knew:

---

[4] Whether counsel was ineffective is a mixed question of law and fact and is reviewed *de novo*. *Thompson v. United States*, 504 F.3d 1203, 1206 n.4 (11th Cir. 2007).

- Defense counsel gave Mesa the incorrect advice that working at Vacaciones would not violate his bond; the Vacaciones issue was fully aired at the May 25 hearing; and the district court declined to revoke Mesa's bond;

- The government did not have any evidence that Vacaciones was an illegal operation, while Mesa provided documentation showing its legitimacy;

- Mesa cooperated with the government and provided truthful information, both about the instant case and several other federal investigations, at least through May of 2017;

- The government admitted that Mesa's Vacaciones employment affected its departure recommendation; nonetheless, in making its recommendation, the government also considered lies that Mesa had told at an early proffer session and that he should not be credited for aiding in the conviction of his subordinates in the conspiracy;

- Mesa's plea agreement expressly provided that the government was not required to make a § 5K1.1 recommendation at all, much less one that suited Mesa's sense of the value of his cooperation; and

- The government made a § 5K1.1 motion requesting a sentence 27 months below the low end of the sentencing guidelines—it did not refuse to make a § 5K1.1 motion at all.

The district court directly asked defense counsel what he proposed an appropriate departure would be if the court

considered all of Mesa's cooperation and his "ability to continue to possibly work," rather than just considering the cooperation that the government believed should be credited.  The court carefully and fully considered the issue.    After the court granted the government's § 5K1.1 motion, it varied downward another eight months from the government's proposed sentence of 108 months, settling on a sentence of 100 months' imprisonment.  In choosing this sentence, the court expressly stated that it weighed Mesa's cooperation against his crime's impact on the 700 victims.

Given all of these facts and circumstances, Mesa has not shown that there is a reasonable probability that the outcome of the proceedings would be different if the Vacaciones issue had never been raised at all.

Mesa argues that our prejudice inquiry is faulty because it should be premised on the decision of a hypothetical reasonable court, not on the "idiosyncracies of the particular decisionmaker." *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068.  He is incorrect. The section of *Strickland* that Mesa relies on here instructs courts not to consider evidence "about a particular judge's sentencing practices" or "about the actual process of decision, *if not part of the record of the proceeding under review.*"  *Id.* (emphasis added).  In other words, it restricts courts conducting a prejudice inquiry from using *extra-record* evidence about a court's general decision-making tendencies.  *See id.*  It does not bar courts from considering record evidence of how the court made its decision in a particular case.    And here, that record evidence clearly shows that, at

sentencing, the district court had all of the information necessary to understand and consider the effect of the Vacaciones issue on the government's departure recommendation and the sentence it would impose. Mesa has not shown a reasonable probability that, absent defense counsel's incorrect advice, the result would have been different.

Because Mesa has not shown that his counsel's incorrect advice prejudiced him, we affirm the district court's denial of his § 2255 motion to vacate his sentence.

**AFFIRMED.**